JASPER E. JONES, Judge.
The State of Louisiana, Health & Human Resources Administration, Office of Human Development, petitioned the Juvenile Court of Bossier Parish for a determination that Daughter A, age 12; Daughter B, age 10; Daughter C, age 9; Daughter D, age 6, and *459 Son E, age 8 are abused children and should be made wards of the court.[1] These proceedings were instituted under the provisions of LSA-R.S. 14:403. Judgment was rendered declaring Daughter D and Daughter C to be abused and neglected children and making them wards of the court. The judgment placed the children in the conditional custody of their mother, Mrs. Y, subject to her and her husband, Mr. X, complying with certain conditions. Y and X appeal. We affirm.
This sordid and pathetic tale of child abuse centers around the short, though already scarred, lives of Daughter D and Daughter C. In February 1979 Daughter D was admitted to L.S.U. Medical Center in Shreveport and diagnosed as having gonorrhea. Subsequent treatment cured this venereal disease, but tragically on August 28, 1979 Daughter D was re-admitted to L.S.U. Medical Center along with her sister Daughter C. At this time both girls had gonorrhea. Daughter D had stated in February, 1979 that her step-brother Junior, age 18, and his friend Elbert, age 18, had “fooled with” her. The trial judge, however, found there was no evidence to show Junior to be the cause of the girls’ gonorrhea. Mr. X made Junior leave the family home in February. He now lives two or three blocks from X and Y’s residence but maintains close contact with his father, Mr. X.
Testimony from Dr. McVee, an expert in pediatrics, revealed it is virtually impossible to contract gonorrhea without an intimate personal contact by an infected person. Mr. X and Mrs. Y’s misguided belief that the girls got the disease from using the bathroom facilities in either the skating rink or church is quite unfounded.
Though the trial judge placed the conditional custody of Daughters D and C only in their mother she was not separated from their father; therefore, the children would be in the home of both their mother and father and their two sisters and brother. For these reasons many of the conditions of custody which are below set forth were directed to Mr. X and Mrs. Y.
“1. The parents, Mr. and Mrs. X and Y, must attend the weekly sessions of Parents Anonymous for such period of time as will be determined by the Office of Human Development through the Welfare Social Worker.
2. Daughters D and C are required to undergo a regular medical examination at least once a month from this date, November 21, 1979, either at the L.S.U. Medical Center or at the Bossier Health Unit, if facilities are available at such unit. The purpose of such visits will be to determine sexual abuse or contraction of any venereal disease or to determine any other endangerment to the girls’ health or emotional stability.
3. In case Mrs. Y absents herself from the home, for any reason, for more than a period of three hours at a time, she is to insure that the children will be supervised by a person who has been approved by the Office of Human Development. Mrs. Y is to submit any names of any persons to the department in order that they may be approved but may not leave her children with anyone who has not been so approved.
4. Mr. X and Mrs. Y are not to permit Junior or Elbert to come to their home at any time for any reason.
5. Mr. X and Mrs. Y are to request that Junior move to some other place of residence other than the one where he is now residing. .
6. Mr. X and Mrs. Y are to allow monthly visitations by the Welfare Social Worker through the Office of Human Development. These visitations must occur once a month, either at X and Y’s home or at the Office of Human Development during the regular office hours which are 8:00 A.M. to 4:30 P.M.
7. Mrs. Y is not to permit sexual abuse or neglect of any kind to her children by *460 any person and shall do whatever is required to see that the conditions of probation are carried out.”
Mr. X and Mrs. Y appeal this judgment assigning as error the admission of a certain letter into evidence which was hearsay. Appellants contend that without this hearsay evidence the State failed to prove their daughters were abused and neglected. The letter in question was dictated by Mr. X’s daughter Z to her fiancé. At the time of trial Z was déad. Z did not have enough education to have written the letter herself, but she signed it. The letter made various allegations against Mr. X, primarily that he had compelled Z to have intercourse with him.
Appellants urge that the trial judge considered this letter and in so doing tainted the proceedings with nullity. Appellee argues, however, that since this is a civil proceeding, the letter is admissible and only goes to the weight of the evidence.
The letter is clearly hearsay. Appellants had no opportunity to cross-examine the author of the letter and therefore had no way tó test and determine the truth of the hearsay statements against Mr. X. We cannot find, and have not been directed to, any exception to the hearsay rule under which this letter may fall. C.J.P. Art. 71 provides that the hearing shall be conducted according to the rules of evidence applicable to civil proceedings. The introduction of this letter was certainly violative of the rule against hearsay evidence. However, because we find the trial judge did not consider this letter in making his determination of abuse and neglect, the proceedings have not been stricken with nullity.
In cases in which the appellate court could not determine that the juvenile court did not rely upon hearsay evidence in making its decision, the proceedings were held to have been stricken with nullity and the determinations were reversed. See St. in Int. of Prestridge, 323 So.2d 868 (La.App. 2d Cir. 1975), wherein the court stated:
“The report, containing hearsay, opinion, and otherwise inadmissible evidence is in the record. Absent any contrary indication we must conclude that whatever is in the record was considered by the juvenile judge.” . Id. at 870. [emphasis added].
See also State in Interest of Simmons, 299 So.2d 906 (La.App. 3d Cir. 1974), wherein the court stated:
“The report, containing hearsay, opinion, and otherwise inadmissible evidence is in the record. Absent any contrary indication we must conclude that whatever is in the record was considered by the juvenile judge.” Id. at 908-909. [emphasis added].
In In Re: St. in Interest of Elliott, 206 So.2d 802 (La.App. 2d Cir. 1968), there was inadmissible hearsay evidence introduced, but this error was not the basis for the reversal. The court stated that even considering the hearsay evidence the over-all record did not support a finding that the children have been neglected.
In the present case we know that the juvenile judge did not rely on the hearsay evidence in making his determination of abuse and neglect. The trial judge’s reasons for judgment clearly shows that he attached no weight to the letter allegedly written by the deceased Z.[2] The trial judge *461 found Daughters D and C were abused children solely based upon a finding of fact that they had contracted gonorrhea.
We agree with the trial judge that the evidence which established Daughter D had become infected with gonorrhea twice in seven months and that C also had the disease and that it was transmitted only by sexual contact established the young girls had been abused as result of neglect. We also note there was nothing in the letter that contributed to these conclusions. The trial judge also noted that the evidence failed to prove that Mr. X did it. Had the juvenile judge considered the letter he would not have left the two children in the home with Mr. X.
The trial judge’s determination in custody matters is entitled to great weight and his discretion in those matters will not be disturbed on review in absence of a clear showing of abuse. St. in Interest of Purcell, 337 So.2d 637 (La.App. 3d Cir. 1976); St. in Interest of Thompson, 372 So.2d 1255 (La.App. 3d Cir. 1979).
Following the trial judge’s determination of abuse and neglect, which we have found was supported by the admissible evidence, he did not abuse his discretion by placing the two young girls in the custody of their mother subject to the conditions set forth earlier in this opinion. The conditions are all designed to avoid a recurrence of the abuse to which these children were subjected.- Mr. X testified of his closeness to Junior, the adult half-brother'of D and C and their possible abuser, and because of it his inability to totally prevent the visits of Junior to his home. For this reason alone the juvenile judge was justified in placing the conditional custody of the abused children solely in Mrs. Y and requiring her not to leave the children alone for more than three hours unless they were supervised by a person approved by appellee.
For the reasons assigned the judgment is AFFIRMED at appellants’ cost.

. The names of the parties involved in this juvenile proceeding have been designated by letters of the alphabet where necessary to protect the confidentiality of this juvenile proceeding.

. “Now there has been a lot of extraneous things about which I’ve heard evidence of some sort or another. But what I find to be a fact is that D, and I believe the evidence shows that she is now seven, has contracted gonorrhea in February, 1979 and in August of 1979, and that C, who I believe the evidence shows is age nine, contracted gonorrhea in August, 1979 In fact there is no evidence to show who transmitted the gonorrhea to the girls, or either of them ... I don’t believe under the testimony we’ve got, I just do not believe that there is any way these girls could have gotten gonorrhea, particularly D having contracted it twice within a period of less than a year, unless somebody abused her. It is inconceivable to me that that child has not been sexually abused for her to contract gonorrhea twice, and I believe that also C has been abused. So first of all I find that those two girls are abused children. Now secondly, I don’t think it is necessary under the statute for me to find who did the abusing. Nobody has, as counsel, one or both counsel, have pointed out, nobody is really on trial here for that, and Mr. X is not on trial for it. I’ll say this, if he is *461 on trial for it the evidence fails to prove he did it. I can’t say that Mr. X did it. I don’t know who did it. The fact of the matter is as I said the evidence doesn’t show who did it . Now the law provides that the parents are responsible for the children And it is inconceivable to me that it could be concluded any other way, a girl who as a seven years old lives in the home and contracts gonorrhea twice within a period of 7 months. Now I cannot specify from this evidence exactly what X and Y did or didn’t do which constituted neglect, but something they did was neglectful or that girl would not have been allowed to have had gonorrhea twice, and particularly after-she got it the first time . . . And I just can’t see any way that this Court could find that there was not some neglect involved in the allowing these girls to obtain-contract gonorrhea the second time. The first time I could understand, I can’t really understand that, that is not correct. But I suppose you’d say the first time I could overlook. But I can’t see any rational reason being given for the second time. So I find, as I said, number one, that the children are abused, and number two, I find that the children have been neglected.”