LWELCH, J.
In this case, Darlene H. (“the mother”) appeals from the juvenile court’s adjudication of her minor child (“D.H.”) as a child in need of care. Finding that the State of Louisiana, through the Department of Social Services, Office of Community Services (“the State” or “OCS”), failed to meet its burden of proof that D.H. was a child in need of care and that the juvenile court’s judgment adjudicating D.H. as a child in need of care was not supported by the evidence, we reverse.
*557 I. FACTUAL AND PROCEDURAL HISTORY
These proceedings were initially commenced on May 5, 2004, when OCS received a report of alleged neglect by the mother concerning D.H., a male born on June 24, 1996.[1] As a result of this report, Robin Bickham, a Child Protection Investigator with OCS (“the investigator”), commenced an investigation into the matter.
Thereafter, OCS, through the investigator, obtained an oral instanter order placing D.H. in the temporary custody of OCS at 11:08 a.m. on May 14, 2004. The written, instanter order with supporting affidavit by the investigator was subsequently filed at 1:55 p.m. on the same date, although not signed by the juvenile court until May 17, 2004.
Thereafter, a continued custody hearing was held on May 18, 2004. The State called the investigator as its only witness. Darlene H. testified on her own behalf, as did her mother, M.R.C., and A.H., a fourteen-year-old neighbor whom Darlene H. frequently used to baby sit D.H. At the conclusion of testimony, the juvenile court found “probable cause” existed and continued custody of D.H. with the State. An order of continued custody was signed on May 24, 2004, finding treasonable grounds to believe that D.H. was in need of care and that continuing custody with the State was necessary for his safety and protection.
Thereafter, on June 7, 2004, the State, through the district attorney, filed a petition to have D.H. declared a child in need of care. In this petition,- the State alleged, “[t]hat due to lack of appropriate supervision, the mother has placed her son at risk of harm,” and requested that the juvenile court adjudicate D.H. as a child in need of care. A hearing to answer the State’s petition was held on the same date, wherein the mother denied the allegations. The juvenile court then set both the adjudication hearing and dispositional hearing for July 6, 2004. The mother’s written answer and the order setting the matter for hearing were filed on July 14, 2004 and signed by the juvenile court on July 16, 2004.
At the adjudication hearing on July 6, 2004, the State called the investigator as its only witness. Portions of the investigator’s testimony were admitted over the hearsay objection of the mother. Darlene H, testified on her own behalf. After hearing the testimony of these two witnesses, the juvenile court adjudicated D.H. a child in need of care, but ordered the State to reinvestigate the matter to find out if there were other supporting witnesses to the conduct reported to OCS. The juvenile court rendered judgment of disposition continuing custody of D.H. with the State; approving the OCS case plan dated June 9, 2004, with the goal of reunification; placing D.H. in a certified foster home; ordering liberal visitation between D.H. and his mother; and ordering the mother to submit to a drug screen following the hearing. A review of the disposition was set for November 8, 2004. The juvenile court signed a written judgment to this effect on August 12, 2004, and it is from this judgment that Darlene H. appealed.
II. ASSIGNMENTS OF ERROR
In her appeal the mother assigns as error that: (1) the State’s petition did not allege proper grounds under La. Ch.C. art. 606 to declare D.H. a child in need of Reare, nor did it set forth the specific acts or omissions of the parent as required by Article 634; (2) the juvenile court abused its discretion in adjudicating D.H. a child *558 in need of care; and (3) the juvenile court erred in admitting hearsay testimony of the investigator at the adjudication hearing.
III. SUFFICIENCY OF THE STATE’S PETITION
Through her first assignment of error, the mother questions the legal sufficiency of the State’s petition to adjudicate D.H. as a child in need of care. The procedural means by which to question the legal sufficiency of a pleading is through the peremptory exception raising the objection of no cause of action. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237. The record does not reflect that the mother raised the objection of no cause of action before the juvenile court, but this does not preclude the mother from raising the objection of no cause of action before this Court.[2] However, the exception is not properly before this Court because the mother did not file a pleading with this Court urging it as required by Uniform Rules — Courts of Appeal, Rules 2-7.2 and 2-7.3. Rather, the mother raised the issue of the legal insufficiency of the State’s petition to state a cause of action for the first time in her appellate brief. A brief, including an appellate brief, is not a pleading. Williams v. State, Department of Health and Hospitals, 95-0713 (La.1/26/96), 671 So.2d 899, 902. Accordingly, we find Darlene H.’s objection to the legal sufficiency of the petition has not been properly presented to this Court.
Although the peremptory exception of no cause of action may be noticed by either the trial court or the appellate court on its own motion,[3] this Court declines to do so in this case. While we find, and discuss below, the reasons why the State’s petition to adjudicate D.H. a child in need of care is statutorily deficient, |fiwe find a reversal of the juvenile court’s judgment is equally warranted on other grounds as detailed herein.
Louisiana Children’s Code article 606 sets forth the grounds on which a child can be found a child in need of care, and it provides as follows:
A. Allegations that a child is in need of care must assert one or more of the following grounds:
(1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.
(2) The child is a victim of neglect.
(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any Other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.
(4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is now unable to retain custody or control or the child’s welfare is otherwise endangered if left within the parent’s custody or control.
(5) The conduct of the parent, either as principal or accessory, constitutes a *559 crime against the child or against any other child of that parent.
B. A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care. (Emphasis added.)
A “child in need of care” proceeding is commenced by the filing of a petition by the district attorney or “any other person authorized by the court.” La. Ch.C. art. 631. The petition shall include, “[fjacts which show that the child is a child in need of care, including the acts or omissions of either parent which caused or contributed to the child’s condition.” La. Ch.C. art. 634(A)(3).
| fiWith regard to the petition filed by the State (through the district attorney), its sole allegation with respect to D.H. being a child in need of care is, “[t]hat due to lack of appropriate supervision, the mother has placed her son at risk of harm.” While the petition alleges that the child is without “supervision” and is at “risk of harm,” it does not specifically allege the “disappearance or prolonged absence of his parent,” nor does it specifically allege that the.child has been “placed at substantial risk of imminent harm because of the continuing absence of the parent,” either of which should have been asserted in the petition. La. Ch.C. art. 606(A)(3). Additionally, the petition does not allege any facts showing that the child is in need of care nor does it allege any acts or omissions of the mother which caused or contributed to the child’s condition, as required by La. Ch.C. art. 634(A)(3). The State’s petition failed to comply with the formal statutory requirements, because it does not contain these necessary allegations of fact.[4]
However, the failure to comply with these formal requirements is not grounds for dismissal of the petition or grounds to invalidate the proceeding unless the failure results in “substantial prejudice.” La. Ch.C. art. 633(D). While the petition did not fully state grounds under La. Ch.C. art. 606 to have a child declared in need of care and further did not set forth the specific acts' and omissions of the parent, as required by La. Ch.C. art 634(A)(3), the appropriate remedy is not to dismiss the State’s petition and return custody immediately to the mother, as suggested by her, but rather to determine whether or not the State’s failure to comply with the formal requirements of the petition resulted in “substantial prejudice.”
While we have found that the State’s petition failed to comply with the statutory requirements for a petition to adjudicate a child as a child in need of care, 17we need not reach a determination of whether it caused “substantial prejudice” to the mother, because we find a reversal of the juvenile court’s judgment is warranted on the mother’s remaining two assignments of error.
IY. THE ADJUDICATION HEARING
Through her second and third assignments of error, Darlene H. contends that the juvenile court erred and abused its discretion in finding that the State met its burden of proving that D.H. was a child in need of care and that the juvenile court erred in admitting hearsay testimony at the adjudication hearing.
A. Standard of Review
It is well settled that an appellate court cannot set aside a juvenile court’s findings of fact in the absence of *560 manifest error or unless those findings are clearly wrong. In re A.J.F., 2000-0948 (La.6/30/00), 764 So.2d 47, 61. In its manifest error review, it is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. Id. at 62. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. Id.; see Rosell v. ESCO, 549 So.2d 840 (La.1989). If the juvenile court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.; see Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.4/3/02), 816 So.2d 270.
In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder' is clearly wrong or manifestly ^erroneous. See Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. However, where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the appellate court may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id.
B. Burden of Proof
In this case, the State’s petition sought to adjudicate D.H. as a child in need of care based on La. Ch.C. art. 606(A)(3), which provides: “The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.” (Emphasis added.)
At the adjudication hearing, the State bears the burden of proving by a preponderance of the evidence that the child is a child in need of care. La. Ch.C. art. 665. In order to support this adjudication, the State was required to prove, by a preponderance of the evidence, that (1) D.H. was without supervision because of a prolonged absence or disappearance by Darlene H.; or (2) a continuing absence by Darlene H. placed D.H. at substantial risk of imminent harm. The State contends that they met their burden of proof at the adjudication hearing because the evidence indicated Darlene H. was leaving D.H. home alone at night while she went out drinking; because Darlene H. was leaving the child with neighbors or babysitters whom she did not know very well; and because Darlene H. had not paid her rent for April or May and was being evicted from her apartment.
|9C. Testimony Presented at the Adjudication Hearing
The investigator and Darlene H. were the only two witnesses to testify at the adjudication hearing.[5] The State present *561 ed its entire case through the testimony of the investigator, whose personal or firsthand knowledge of the facts of this case was limited to the involvement of OCS and what she personally observed during her interviews of D.H. and the mother.[6] The State’s case can be summarized as follows.
After OCS received the report of alleged neglect of D.H. by Darlene H., Robin Bick-ham commenced an investigation into the matter. As part of her investigation, Robin Bickham interviewed D.H., Darlene H., and “collaterals.” These “collaterals” were identified as family members and one neighbor of Darlene H., whom the investigator refused to identify.[7] During the interview with the neighbor,[8] she stated to the investigator that the mother was leaving D.H. home alone at night on a regular basis while she went out drinking, or sometimes, she was leaving the child with neighbors or babysitters whom she did not know very well. The neighbor also told the investigator that the mother was bringing strangers home with her from bars and engaging in sexual relations. Additionally, the investigator testified that during her investigation she learned that the mother had not paid her rent for April or May and was being evicted from her apartment. OCS “validated” the report concerning D.H. and obtained the instanter order of |incustody placing D.H. in the custody of the State. Thereafter, the State commenced proceedings to adjudicate D.H. as a child in need of care.
Based on our review of this record, we find the State’s only evidence with regard to (1) an alleged lack of supervision because of a prolonged absence or disappearance by a parent or (2) an alleged continuing absence by the parent which placed the child at substantial risk of imminent harm consisted of hearsay statements made to the investigator by one unidentified neighbor who did not even testify at the adjudication hearing.
Darlene H. testified that she had never left her son, D.H., alone or unsupervised. However, the investigator testified that the unidentified neighbor informed her that D.H. had been left alone or unsupervised. In response, Darlene H. admitted that there had been one incident where D.H. was left alone by a babysitter. According to Darlene H.’s testimony, this incident occurred one night after D.H. was asleep. Darlene H. asked one of her neighbors, Rachel, to watch D.H. at their apartment while Darlene H. left for a short period of time to go to a convenience store. After Darlene H. left, Rachel left the apartment to go down the hall to tell her husband that she was watching D.H. D.H. awoke and became upset when he was unable to find his mother. He walked into the hall and to another neighbor’s apartment. Darlene H. testified that no harm came to D.H. because of this incident.
*562 During cross-examination, and after the investigator admitted that this was the only incident that the unidentified neighbor had any personal knowledge of, the following exchange took place:
WITNESS [INVESTIGATOR]: The neighbor stated that mom was leaving the child on a regular basis and that the child had come to her house one night after mom had left him alone and he was afraid, and he didn’t know where his mother was.
BY MR. BRANDT:
InQ. And that was on — on one occasion that that happened, that this neighbor told you that?
A. That was one occasion. But that it had happened prior to that. And she stated that she had talked to other neighbors in the complex who were aware that mom was leaving him home alone. Record, p 131, lines 13-24 (Emphasis added).
Darlene H. objected to this testimony as hearsay, but the juvenile court overruled the objection. Thereafter, the investigator admitted that she never even interviewed or questioned any of these “other neighbors” to verify the allegation that D.H. was being left alone.
D. Hearsay
Darlene H. contends that the State’s determination that she “was leaving the child alone on a regular basis” was based solely on the above testimony and that the juvenile court committed reversible error by admitting this hearsay testimony at the adjudication hearing. We agree that the above testimony was hearsay and should not have been admitted.
The applicability of the rules of evidence during “child in need of care” proceedings depends on the stage at which the evidence is being submitted. For example, at the continued custody hearing, “hearsay evidence is admissible.” La. Ch.C. art. 624(F). At the disposition hearing (after the child has been adjudicated as a child in need of care), the rules of evidence are not applicable. La. C.E. art. 1101(C)(3). Rather, under La. Ch.C. art. 680, a court “may consider evidence which would not be admissible at the adjudication hearing,” including hearsay. State, in the interest of C.W., R.W., J.W., and J.W. v. Womack, 28,310 (La.App. 2nd Cir.2/28/96), 669 So.2d 700. However, the rules of evidence are fully applicable at the- adjudication hearing.
Louisiana Children’s Code article 663(A) provides that in a child in need of care proceeding, “the adjudication hearing shall be conducted according to the rules of evidence applicable to civil proceedings.” Additionally, La. C.E. art. |ia1101(A)(l) provides, in part that, “Juvenile adjudication hearings in non-delinquency proceedings [e.g., a child in need of care proceeding] shall be governed by the provisions of this Code applicable to civil cases.” The general rule of the inadmissibility of hearsay evidence is one such rule of evidence that has been enforced in juvenile adjudication proceedings. State, in the interest of Prestridge, 323 So.2d 868 (La.App. 2nd Cir.1975); State, in the interest of Garza, 388 So.2d 458 (La.App. 2nd Cir.1980); State, in the interest of Rotolo, 361 So.2d 468 (La.App. 4th Cir.1978); and State in the interest of Clark, 400 So.2d 334 (La.App. 4th Cir.1981).
Hearsay is “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C). Hearsay is usually unreliable because it is based on statements made by persons who are not before the court, have not been sworn, and are not available for cross-examination. *563 Because of its unreliability, hearsay is generally inadmissible, unless it falls under one of the statutory exceptions set forth in La. C.E. arts. 803 or 804. Hence, at the adjudication hearing of a child in need of care proceeding, hearsay testimony is not admissible into evidence, unless the testimony falls under one of the exceptions to the hearsay rule.
In this case, the investigator’s testimony with regard to statements made to her by the unidentified neighbor was hearsay. Further, the investigator’s testimony as to what “other neighbors” told the unidentified neighbor was “double hearsay.” We find that the hearsay nature of the statements made by the unidentified neighbor to the investigator, as well as the double hearsay nature of the statements with regard to what “other neighbors” had said to the reporting neighbor, were unreliable and should not have been admitted into evidence at the adjudication hearing unless the statements fell under one of the exceptions to the hearsay rule. 113We cannot find, nor have we been directed to, any exceptions to the hearsay rule into which these statements may fall. Accordingly, we find that the juvenile court erroneously admitted hearsay testimony into evidence at the adjudication hearing.
We need not, however, determine whether or not the erroneous admission of hearsay testimony was legal error that interdicted the fact-finding process, which would then enable us to make our own independent de novo review of the record,[9] because our review of the record reveals that even with the admission of the hearsay testimony, there is still no reasonable factual basis for the factual finding by the juvenile court that D.H. was a child in need of care.
E. Lack of Additional Supporting Evidence
The State’s only evidence that Darlene H. was leaving the child at home alone or that she was leaving D.H. with babysitters whom she did not know very well was through the investigator. However, the investigator’s testimony was so inconsistent and contradictory on its face, that a reasonable fact finder could not credit her testimony.
The investigator testified that the mother and D.H. told her that D.H. was never left alone and that if the mother had to leave, she always had a babysitter watch D.H. But, while testifying that she “investigated” the allegations made to OCS regarding the one incident where D.H. was left alone by a babysitter, the investigator admitted that she never interviewed the babysitter or any other neighbor, regarding whether the mother left D.H. alone. Additionally, Darlene H. testified that no harm had come to D.H. as a result of the one incident where the babysitter left him alone for a short period of time. The testimony of the investigator revealed that D.H. showed no signs of abuse or neglect. The 114investigator did not even think it was necessary to have D.H. evaluated to see if he was harmed by the incident.
Additionally, there was no factual support in the record for the conclusion that the mother was leaving D.H. with babysitters or neighbors whom she did not know very well. During her interview with the investigator, the mother was unable to tell the investigator the last name of the baby *564 sitter who had left D.H. alone. The investigator assumed it was because the mother did not “know” the babysitter’s last name. However, the mother’s testimony indicated it was not that she did not “know” the babysitter’s last name, but rather, she could not “remember” her last name. However, she did know that the babysitter, Rachel, was her friend and neighbor and that she was the daughter-in-law of another neighbor whom Darlene H. was able to identify by name. Accordingly, we find that there was no evidence in the record that the mother was leaving D.H. with neighbors or babysitters whom she did not know very well.
The only other evidence offered by the State at the adjudication hearing was that the mother had not paid her rent for two months and was being evicted, and that she had moved several times, resulting in the child attending several different schools. Louisiana Children’s Code article 606(B) provides that, “[a] child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.” It is clear from this language that the Louisiana Legislature did not intend to allow a parent’s financial status to be the sole basis for a child in need of care adjudication. State, in the Interest of A.R., 99-0813 (La.App. 1st Cir.9/24/99), 754 So.2d 1073.
The mother admitted in May 2004, when the matter was first being investigated, that she was unemployed and that she was being evicted from her apartment for not paying rent for April or May. She explained the reason she hadjj^not paid her rent was that the apartment was leased to her father and she and her father were supposed to share in the $600.00 per month rent. However, her father disappeared at the end of March, leaving her without the necessary resources to pay the rent. By the time of the adjudication, she had already obtained other housing within her budget and was seeking employment. While her eviction (and resulting move) and lack of employment might indicate that she is financially unstable, her financial instability alone is not sufficient grounds for the State to prevail in an adjudication. See La. Ch.C. art. 606(B); State, in the Interest of A.R., supra.
CONCLUSION
We find that there was no evidence that D.H. was without supervision because of a prolonged absence or disappearance,by the mother. While the mother admits the one incident where the babysitter left D.H. alone, the mother’s un-rebutted testimony was that she was gone for only a few minutes — not a prolonged period of time.
Additionally, other than the hearsay testimony regarding the statements from one neighbor, there was no evidence of a “continuing absence” by the mother which placed D.H. “at substantial risk of imminent harm.” The State did not introduce any evidence of a repeated pattern of the mother placing the child at risk by willfully and voluntarily leaving the child at home unattended or leaving the child with babysitters whom she did not know.
Lastly, the inherent conflict in the juvenile court’s judgment in (1) adjudicating D.H. a child in need of care (meaning that the State satisfied its burden of proof), but (2) ordering the State to re-investigate the matter, further shows that there was no reasonable factual basis for the adjudication of D.H. as a child in need of care. In other words, why order a re-investigation if there was already sufficient evidence to support the adjudication? Moreover, we can find no 11fiauthority, nor have we been directed to any authority, that would authorize the juvenile court to order a reinvestigation of the matter after an adjudication that the child is in need of care.
*565 After reviewing the record in this case, we agree with the appellant’s summation of this ease that “the trial court accorded apartment house gossip the status of reliable evidence in contravention of the mother’s right of due process.” We find there was no reasonable factual basis for the juvenile court to adjudicate D.H. as a child in need of care, and we find that this record establishes that the juvenile court was manifestly erroneous in adjudicating D.H. as a child in need of care. Therefore, we reverse the judgment of adjudication rendered in open court on July 6, 2004, and signed on August 12, 2004. Additionally, since there can be no judgment of disposition without a proper adjudication, we vacate the judgment of disposition, also rendered in open court on July 6, 2004, and signed on August 12, 2004. We further order that the State immediately return the minor child D.H. to the full care, custody, and control of his mother, Darlene H.
REVERSED WITH ORDER.
KUHN, J., concurs.

. The father of D.H. is deceased.

. See La. C.C.P. art. 2163.

. See La. C.C.P. art. 927(B).

. See La. Ch.C. art. 633, in particular subsection (B), which requires that the allegations of fact be concisely and directly set forth in the petition.

. The record shows that April Johnson, whose address reflects that she is a neighbor of Dar *561 lene H., was personally served on June 18, 2004, with a subpoena to appear at the adjudication hearing set for July 6, 2004. Additionally, the record shows that Tess Lavin, another employee of OCS, accepted service of a subpoena to likewise appear at the adjudication hearing. However, for some reason not set forth in this record, neither witness testified at the adjudication hearing.

.Despite the fact that she had no personal knowledge of these facts, we note that Robin Bickham, in her affidavit in support of the instanter order of custody, specifically stated that she had "acquired personal knowledge" of these facts.

. While these "collaterals” were initially identified by the investigator as family members and "neighbors,” she admitted on cross-examination that she only spoke to one neighbor.

. The investigator refused to reveal the name of this neighbor on cross-examination.

. Where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and the appellate court is entitled to make its own independent, de novo review of the record. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502; Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id.