NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-58

STATE IN THE INTEREST OF B.R. AND T.L.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 17-18887
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

AFFIRMED.

S. Marie Johnson
Public Defender's Office
Sixteenth Judicial District Court
St. Martin Parish
106 West Berard Street
St. Martinville, Louisiana  70582
(337) 394-1446
Counsel for Appellant:
        G.S. (mother)

**M. Bofill Duhe**
**District Attorney**
**W. Claire Howington**
**Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, Louisiana  70560**
**(337) 369-4420**
**Counsel for Appellee:**
      **State of Louisiana**

**Denise Henderson**
**Mental Health Advocates**
**302 Dulles Street, Room 447**
**Lafayette, LA 70506**
**(337) 262-2030**
**Counsel for Appellees:**
      **B.R. (minor child)**
      **T.L. (minor child)**

**KEATY, Judge.**

The mother, G.S.,[1] appeals the trial court's judgment adjudicating B.R. and T.L. as children in need of care. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

G.S. is the biological mother of B.R. and T.L. T.L.'s biological father is B.L. and B.R.'s biological father is C.R. B.R. was born on November 23, 2005, and T.L. was born on February 8, 2015. On September 18, 2017, the State of Louisiana, Department of Children and Family Services (DCFS) received a report that B.R. and T.L. were victims of neglect and dependency. The children were placed in the temporary custody of the DCFS pursuant to an Oral Instanter Order on September 19, 2017, and a confirmed written Instanter Order dated September 20, 2017. At the time of their removal from their mother's custody, B.R. was eleven years old and T.L. was two years old. Following a continued custody hearing on September 22, 2017, at which time the parties stipulated to probable cause without making any admissions, the trial court ordered that B.R.'s paternal aunt be given temporary custody of her and that the DCFS maintain continued custody of T.L. Following an adjudication hearing on November 21, 2017, and pursuant to a written adjudication judgment signed that same day, the trial court determined that B.R. and T.L. were children in need of care. The trial court maintained continued custody of B.R. with her aunt, maintained continued custody of T.L. with the DCFS, and physically placed T.L. with his paternal grandparents.

On November 22, 2017, G.S. filed the instant appeal from the November 21, 2017 judgment. On appeal and in her sole assignment of error, G.S. contends the

---

[1] The initials of the children and their parents are used herein pursuant to Uniform Rules—Courts of Appeal, Rule 5–2. *See also* Uniform Rules—Courts of Appeal, Rule 5–1.

trial court erred in granting judgment in favor of the State, adjudicating B.R. and T.L. as children in need of care.

## STANDARD OF REVIEW

"We review the juvenile court's findings of fact under the manifest error standard of review[.]" *State ex rel. J.Y.M.*, 09-1335, p. 5 (La.App. 3 Cir. 8/4/10), 45 So.3d 1128, 1132. In *State ex rel. D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560, the first circuit noted:

> [I]t is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. [*In re A.J.F.*, 00-948 (La. 6/3/00), 764 So.2d 47,] 62. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. *Id.*; *see Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*; *see Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270.
>
> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

## DISCUSSION

In her sole assignment of error, G.S. contends the trial court erred in granting judgment in favor of the State, adjudicating the minor children in need of care. Louisiana Children's Code Article 606 sets forth the grounds on which a child can be found in need of care, and it provides, in pertinent part:

> A. Allegations that a child is in need of care shall assert one or more of the following grounds:

2

. . . .

(2) The child is a victim of neglect.

. . . .

B. A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.

"Neglect" is defined in La.Ch.Code art. 603(18) as:

[T]he refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child's physical, mental, or emotional health and safety is substantially threatened or impaired.

Adjudication of a child in need of care is warranted when a parent shows a repeated pattern of placing a child at risk and exposing a child to a lack of adequate shelter. *State ex rel. AR*, 99-813 (La.App. 1 Cir. 9/24/99), 754 So.2d 1073. At the adjudication hearing, the state bears the burden of proving by a preponderance of the evidence that the child is a child in need of care. La.Ch.Code art. 665; *State ex rel. L.B.*, 08-1539 (La. 7/17/08), 986 So.2d 62. It is not the state's duty "to prove its case beyond a reasonable doubt, by clear and convincing evidence, or to disprove every hypothesis of innocence." *State ex rel. L.B.*, 986 So.2d at 64.

In the instant matter, the State alleged in the petition that the children were victims of neglect as defined in La.Ch.Code art. 603(18), based upon an incident which occurred on September 18, 2017, when law enforcement responded to a call concerning G.S.'s boyfriend, Ernie Martin. The State indicated that Martin was driving his truck with B.R. and T.L. as occupants when officers pulled him over and noted the presence of a loaded handgun, drugs, and drug paraphernalia. It states that G.S., who was later found sleeping at her house, did not know the whereabouts of

3

her children. According to the State, at that time, a warrant was executed on G.S. "for a Failure to Appear on a charge of Simple Burglary back in June, 2017." The State further reveals that G.S. was arrested and incarcerated at the St. Martin Parish Jail, which left B.R. and T.L. "without a legal caregiver." It alleges that during the investigation, B.R. advised that the drugs found in Martin's truck belonged to G.S., who "'smoked marijuana for stress.'" The State further alleges that G.S. "failed to protect her two children by not knowing where they were and ultimately not preventing the children from being in the vehicle with someone with drugs and a loaded weapon."

Next, the State makes the following allegations in the petition with respect to B.R.'s father, C.R.:

> [C.R.] failed to protect [B.R.] by allowing her to return and stay with her mother knowing that [G.S.] still was abusing drugs. [C.R.] was not available when [B.R.] was placed in the custody of the [DCFS]. Further, [C.R.] failed to obtain legal custody of [B.R.], as recommended by the Court, as a measure of keeping the child safe. [C.R.] lacks the protective capacity to ensure the safety and well-being of [B.R.].

The State makes the following allegations with respect to T.L.'s father, B.L.:

> [B.L.] was not available when his child, [T.L.] was removed and has failed to make himself available to the court or the agency concerning his child. [B.L.] failed to obtain legal custody of [T.L], as recommended by the Court, as a measure of keeping the child safe. [B.L.] lacks the protective capacity needed to ensure the safety and well-being of [T.L.].

The State indicates that all reasonable and appropriate efforts have been made to assist the family and provide them with available services, "but to no avail." It asserts the following: "Previously, DCFS attempted to implement a Family Services cases [sic] whereby the agency would assist [G.S.] with substance abuse treatment. However, that case was dismissed as the children went to live with each of their fathers."

The adjudication hearing took place on November 21, 2017, where the State presented Megan Elaire as a witness. Elaire testified that she is the child welfare specialist who was assigned to investigate the matter on September 19, 2017. Elaire "had one previous case" with this family. According to Elaire, the initial investigation in the matter began one day earlier on September 18, 2017, when an on-call case worker received a complaint that G.S. was "arrested for felony charges and the children are without a caretaker." Elaire said that the on-call worker reported to prison and met the children, who were taken there by G.S.'s arresting officer(s). According to Elaire, at that time, the on-call worker released B.R. to her father and T.L. to his grandmother. Because the children were not released to legal caretakers, Elaire was required to re-investigate the matter the following day.

Elaire's investigation revealed a lack of adequate supervision because the children had no caretaker due to G.S.'s incarceration. With respect to T.L., Elaire noted that B.L. was unable to be located. As a result, Elaire revealed that the DCFS was granted custody of T.L. although he was allowed to live with his grandmother "as a relative placement." Her trial testimony indicates that she does not know the whereabouts of, nor has she been able to contact, B.L.

Elaire's investigation further revealed that B.R., who was eleven years old, was "able to verbalize that there was substance abuse going on in the home." Elaire noted that B.R. mentioned the substance abuse to her father, although "he continued to allow the child to go back there." For this reason, the agency determined that C.R. "was not capable of keeping [B.R.] safe," noted Elaire. She revealed that after her initial investigation, B.R. remained with her aunt. Elaire testified that based on her investigation, the DCFS recommends the minor children be in "State's custody" and

that she was unsure "what the parents are doing currently in regards to their case plans."

On cross-examination, Elaire agreed that there was no court order preventing G.S. from having custody of her children. Elaire admitted that C.R. did not believe G.S. suffered from substance abuse and that his inspection of G.S.'s home failed to reveal any safety hazarads or other reasons for concern. Elaire acknowledged that G.S. is not currently incarcerated. G.S.'s counsel also filed a motion to dismiss based on the State's lack of producing any evidence showing that the children were victims of neglect.

After hearing the above testimony, the trial court denied G.S.'s motion to dismiss and found "that at the time of the removal [on] September 18, 2017[,] good cause existed and that the two children, [T.L.] and [B.R.] [were] . . . found to be children in need of care." G.S. subsequently waived her delays. The trial court ordered that T.L. be placed in the custody of the DCFS and placed him with his paternal grandparents. The trial court further ordered that B.R. be placed in her aunt's custody, relieved the DCFS of B.R.'s supervision, and instructed the juvenile court to maintain jurisdiction with respect to her. The foregoing was reduced to writing pursuant to the trial court's judgment rendered that same day.

Our review of the evidence in the record indicates that the State offered sufficient evidence to support a finding that there were reasonable grounds to believe the minor children were in need of care and that T.L.'s continued custody with the DCFS and placement with his grandparents, along with B.R.'s placement with her aunt, was necessary for their safety and protection. Accordingly, we cannot say that the trial court was manifestly erroneous or clearly wrong in its determination that the children were in need of care. Thus, G.S.'s argument is without merit.

## CONCLUSION

The trial court's judgment adjudicating B.R. and T.L. as children in need of care is affirmed. All costs of this appeal are assessed to the mother, G.S.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.