# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2025 CJ 0212

## STATE OF LOUISIANA IN THE INTEREST OF KB, KB, KT

*Judgment Rendered:*_____ SEP 1 9 2025_____

\*\*\*\*\*\*\*\*

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. JC-0254-2022 JJ
Honorable Scott Gardner, Judge Presiding

\*\*\*\*\*\*\*\*

| | |
|---|---|
| Jane Hogan<br>Hammond, Louisiana | Counsel for Appellant<br>MT (Mother) |
| Betsy H. Smith<br>Mandeville, Louisiana | Counsel for Appellees<br>KB, KB, and KT |
| Sandra B. Terrell<br>Covington, Louisiana | Counsel for Appellee<br>State of Louisiana Department of<br>Children and Family Services |

\*\*\*\*\*\*\*\*

BEFORE: LANIER, WOLFE, AND HESTER, JJ.

**LANIER, J.**

The appellant, MT, mother of the minor children KB, KB, and KT[1], appeals the adjudication judgment of the Twenty-Second Judicial District Court, signed November 26, 2024, and judgment of disposition, signed December 17, 2024, ordering that KB, KB, and KT remain in provisional custody with the State of Louisiana and further approving the case plan submitted by the Department of Children and Family Services (DCFS). For the following reasons, we affirm.[2]

## FACTS AND PROCEDURAL HISTORY

On August 2, 2022, the state filed an instanter order for removal and provisional custody to DCFS in relation to KB, KB, and their parents. The state alleged that the infant children were in need of care due to neglect and that emergency removal was necessary for their continued safety. The district court found that DCFS was not required to make reasonable efforts to maintain the parents' custody of their children due to the immediate danger the parents presented to the children. The district court ordered that KB and KB be placed in provisional custody with DCFS pending the filing of a child in need of care (CINC) petition and adjudication, and that they be placed in the least restrictive and most appropriate setting during that time.

The state's affidavit in support of the instanter order alleged that on July 29, 2022, DCFS received a report of neglect/inadequate supervision, where domestic violence was ongoing in the home with the father as the aggressor. The father had allegedly beaten the mother severely while the children were present. It was also

---

[1] The minor children are referred by their initials to preserve their anonymity.

[2] This court has jurisdiction over these proceedings subject to La. Ch.C. art. 330. The article provides that in child in need of care proceedings, an appeal may be taken only after judgment of disposition, and the appeal shall include all errors assigned concerning adjudication and disposition. See *State in Interest of A.S.*, 2019-0248 (La. App. 1 Cir. 9/4/19), 285 So.3d 1129, 1134.

alleged that the children had a strong odor of marijuana on their clothing and belongings. Officers of the St. Tammany Parish Sheriff's Office stated that the mother had a fractured arm, a bruised eye, and stitches on her chin, but that she claimed she had been in a car accident and had gone to Lakeview Hospital. When these officers later asked Lakeview Hospital personnel about the mother's visit, they stated that the mother had claimed to them that she had fallen down a flight of stairs.

Additionally, DCFS noted that the mother was evasive when she was questioned about her injuries. It was later discovered that the father had previously beaten the mother over suspicion that she was cheating on him. The father subsequently turned himself in to the police. The mother had obtained a protective order against the father, but then voluntarily dismissed it when he was released from jail. The mother had also filed for temporary custody of the children, but dismissed that as well. When DCFS questioned the father, he denied giving the mother her most recent injuries, but admitted being arrested for the previous domestic violence incident without going into details. The father was also evasive and argumentative with DCFS when he was questioned.

The mother planned on going to her aunt's home with the children for the weekend. The aunt told DCFS that the father had beaten the mother on several occasions and did not believe that the mother had been in a car accident, since no one else in the family was aware of it. The aunt allowed the mother and the children to stay with her for the weekend, and the father remained at the family residence in Bush, Louisiana. The mother left the aunt's house after staying there for less than a day, but left the children with the aunt. She arrived the next day to take the children with her, which the aunt did not allow. The mother then informed her family that she was moving out of her home.

3

DCFS questioned the mother as to why she left her aunt's house, and she said that she wanted to sleep at home. When asked if she was serious about moving, the mother seemed uncertain, but she said she would move without the children if she had to. She also stated that the father was not at the family home with her. Other family members and collaterals told DCFS that the father had beaten the mother on several occasions, had beaten the mother's friend, and had made threats of violence and death to family members. They were concerned for the safety of the mother and the children and provided DCFS with the name of the maternal grandmother as a possible family placement for the children.

The state filed a CINC petition on August 15, 2022 in relation to KB and KB, stating the aforementioned allegations. On August 31, 2022, the mother reported to DCFS that she would move out of the family home, but was unsure as to where she would go. The father was subsequently arrested by U.S. Marshals on September 1, 2022 for outstanding warrants relating to battery of a dating partner and violation of protective order. The mother had an inoperable phone and was unable to be contacted by DCFS. Following drug screens with DCFS, both parents tested positive for opiates, marijuana, and amphetamines. Both parents were attending family team meetings, and the mother had visited the children twice at the maternal grandmother's home since they entered the state's custody; however, on her second visit, the mother was without supplies for the infant children and was unable to care for them adequately. She was subsequently referred for substance abuse assessment. The family was given case plans and referred to home development classes.

On September 9, 2022, the father filed an objection to the case plan, alleging that it was designed to counter the reunification of the family. On September 19, 2022, the district court signed an answer judgment, where the father denied the children were in need of care, but the mother stipulated that the children were in

need of care without admitting to the allegations. The district court therefore adjudicated KB and KB as children in need of care, and maintained their custody with the state and their placement with the maternal grandparents. On October 10, 2022, the father subsequently stipulated that the children were in need of care without admitting the allegations. The mother continued with her case plan and appeared to be making progress. Although the father was incarcerated, the mother had filed a protective order against him with respect to KB and KB.

On December 21, 2022, the mother signed an agreement to enter Family Preservation Court. She moved to Covington, Louisiana, and maintained employment. On April 8, 2023, the mother gave birth to KT, who remained in her custody, and KB and KB were returned to her custody.[3] The father remained incarcerated during the birth of KT. His release from prison was scheduled for October 2024 until he was caught using a cell phone to send threatening messages to the mother and her boyfriend. Although progressing through family preservation court, the mother began asking if she could drop out.

Some time before June 20, 2024, the father was released from prison. In its report of June 20, 2024, DCFS stated that the mother had tested positive for methamphetamines and marijuana. On July 2, 2024, the state filed and instanter order for removal and provisional custody to KB, KB, and KT. DCFS alleged that on June 26, 2024, the mother was dismissed from family preservation court for non-compliance, but was referred to domestic violence and parenting courses and completed both. The district court signed the order. Additionally, the father reported to DCFS that he and the mother were in a relationship together, in violation of a protective order issued by the district court in favor of the mother and children. The mother was also unable to provide proof of a permanent residence.

---

[3] The father's paternity had been established with respect to KT.

On August 15, 2024, the state filed a CINC petition with respect to KT and a motion to modify the dispositions of KB and KB. The children were again placed in the custody of the maternal grandmother. On October 23, 2024, the district court found KT to be a child in need of care and granted the motion to modify the disposition of KB and KB. On December 17, 2024, the district court signed a judgment of disposition, ordering that KT remain in the state's provisional custody through the supervision of DCFS. On December 30, 2024, the mother appealed the judgment of December 17, 2024.

## ASSIGNMENTS OF ERROR

The mother submits the following assignments of error:

1. The district court erroneously adjudicated KT to be in need of care because the state failed to prove by a preponderance of evidence that the mother had abused or neglected KT and that removal furthered his best interests.

2. The district court erroneously modified KB's and KB's disposition because the state failed to prove that modification was warranted by a preponderance of the evidence.

## DISCUSSION

It is well settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *State ex rel. D.H.*, 2004-2105 (La. App. 1 Cir. 2/11/05), 906 So.2d 554, 559-60. In its manifest error review, it is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. *Id.* at 560. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. *Id.* If the juvenile court's findings are reasonable in light of the record reviewed in

its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.* at 560. If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the appellate court may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Id.*

The purpose of Title VI of the Children's Code, entitled "Child in Need of Care" and applicable to these proceedings, is "to protect children whose physical or mental health, welfare, and safety is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others...." La. Ch. C. art. 601. Furthermore, the health, safety, and best interest of the child shall be the paramount concern in all proceedings under Title VI. *State ex rel. L.B.*, 2008-1539 (La. 7/17/08), 986 So.2d 62, 64. DCFS has the burden to prove the allegations of the petition by a preponderance of evidence. *Id.* It is not DCFS's duty to prove its case beyond a reasonable doubt, or by clear and convincing evidence, or to disprove every hypothesis of innocence. *Id.*

Louisiana Children's Code article 634(A)(4) requires that a petition outline facts which show that the children are in need of care, "including the acts or omissions of either parent which caused or contributed to the child[ren]'s condition." In the August 22, 2022 CINC petition regarding KB and KB, DCFS

7

alleged that there was a valid finding of lack of adequate supervision, and extensive history of criminal behavior and domestic violence, as well as violations of protective orders as to the father. The incidents of domestic violence resulted in severe injuries to the mother. DCFS found that the father failed to "provide a safe, stable, and caring environment for his children," and "placed his children into a situation beyond their ability with which to cope."

As to the mother, DCFS also had a valid finding of lack of adequate supervision. There were multiple domestic violence incidents between her and the father, of which she had been untruthful to medical staff and her relatives. She broke the safe plan of care for her children after only one day and attempted to move with the children out of the parish or the state. She dismissed a protective order against the father once he was released from jail, upon his request, and allowed the father to move back in with her and the children. DCFS also found that the mother had failed "to provide a safe, stable, and caring environment for her children," and "placed her children into a situation beyond their ability with which to cope."

The August 15, 2024 CINC petition regarding to KT alleged that the child was "the victim of abuse perpetrated, aided, or tolerated by the parent," and was also a victim of neglect. The petition states that DCFS became involved with the family in KT's siblings' case, where they were adjudicated to be children in need of care on September 14, 2022, prior to KT's birth. At the time of KT's birth, the mother had been compliant with her case plan, and KB and KB were returned to her custody on July 5, 2023. The mother eventually became noncompliant with her case plan, and allegedly tested positive for methamphetamines and marijuana while in Family Preservation Court. She was discharged from Family Preservation Court on June 26, 2024 due to lack of communication with treatment and her case

8

manager, as well as failed drug screens. The father had also reported to DCFS that the mother had been using illegal substances.

The petition further alleged that the parents were maintaining a relationship, despite the district court issuing a protective order forbidding the father to have contact with the mother and the children. The parents also admitted that they had been seeing one another. The petition alleged that the mother had not provided a safe, stable home for her children and was homeless at the time of the petition's filing. It was further alleged that the mother and father had not been compliant with their case plans since KB and KB were adjudicated as children in need of care.

In anticipation of the hearing held on October 23, 2024, the mother filed into evidence an initial permanency hearing judgment signed August 2, 2023, a DCFS court report dated June 20, 2024, a medical marijuana physician referral form, and drug test results of the mother dated July 2, 2024. DCFS filed a protective order filed November 9, 2022 by the mother against the father, and the mother's June 26, 2024 motion to dissolve a protective order filed against the father.

The initial permanency hearing judgment, signed by the district court on August 2, 2023, stated reunification as the most appropriate plan for KB and KB. The district court ordered the return of KB and KB to the mother's custody in that judgment, and allowed supervised visitation for the father. This judgment was signed shortly after KT's birth and prior to the father's release from jail, while the mother had been progressing with her case plan. The DCFS court report of June 20, 2024 stated that the mother was addressing her substance abuse issues at the time, but still needed to "demonstrate positive behavioral changes." The case plan's goal remained reunification at the time, and the father was incarcerated when this report was authored. DCFS recommended that KB, KB, and KT remain in the mother's custody during that time.

The document referred to as a medical marijuana physician referral form dated June 28, 2024 is simply a printout that states that the mother was prescribed marijuana by an alleged physician for anxiety and insomnia. The drug test results from July 2, 2024 indicates that the mother tested positive for THC on that date. The father had been released from prison prior to the dates of both these documents.

The protective order submitted by DCFS was filed by the mother on November 9, 2022 on behalf of herself, KB, and KB. It ordered the father to not commit further acts of abuse or threats of abuse, stalking or sexual assault against the mother, KB, or KB from the date of filing to April 8, 2024. The father was further ordered to not go within 100 yards of the protected parties or their residence. The motion to dissolve protective order was filed on June 26, 2024, not long after the father would have been released from jail.[4] The mother, as the petitioner, stated the reason for dissolution of the protective order to be "[w]e have children together [and] would like to go to court for visitation opportunities for our kids."

At the October 23, 2024 hearing, Erica Heim, the mother's Family Preservation Court case manager, testified. She stated she was the case manager for the mother, and that the mother had not been compliant with Family Preservation Court and was removed on June 26, 2024. Ms. Heim gave the reasons for the mother's removal as continued missed drug screens, testing positive, and telling the staff that she was going to relocate out of state. Ms. Heim stated that the mother maintained "sporadic" communication with Family Preservation Court staff, but had been an active participant until June of 2024.

---

[4] It is unclear from the motion whether it is the dissolution of an extension of the aforementioned protective order, or whether it is the dissolution of a separate protective order the mother had filed against the father.

Mikyria Michele, DCFS case manager for the mother and father, also testified. She stated that neither parent had been compliant with their case plan, which she had received in July of 2023, at which time the children were living with the mother. Ms. Michele stated that the mother began the case plan as compliant, but became noncompliant as time went on. Ms. Michele stated the principal factor for noncompliance was the mother's testing positive for drugs in Family Preservation Court. It was a condition of the case plan for her to complete Family Preservation Court, but she was removed due to her noncompliance. Ms. Michele did not describe any other ways in which the mother had not complied with her case plan.

Ms. Michele further testified that the mother had a protective order against the father, but she received information via text from the father that he and the mother had been in contact with one another since he had been released from jail. The father also told Ms. Michele that he had also been in contact with his children since that time. When Ms. Michele questioned the mother as to whether the father's statements were true, she stated they had been seeing each other "off and on." Ms. Michele also stated that the mother did not have a stable living condition at that time.

At the close of the testimony, the mother moved for a directed verdict from the district court, arguing that no testimony had been given as to safety concerns for the children, and that all the testimony was only about the mother's noncompliance with her case plan and Family Preservation Court. The district court denied the motion. At that time, the state filed into evidence the entire court record. The district court admitted the record with the exception of any instances of hearsay that the record contained. The district court found a factual basis to adjudicate the children as in need of care, and granted the motion to modify KB's and KB's disposition.

11

We find that the evidence submitted to the district court indicates conditions that go beyond mere noncompliance of the mother with the DCFS case plan or with Family Preservation Court. The evidence indicates facts concerning the children's condition that was caused by the mother's lack of cooperation. See *State in Interest of J.C.*, 2016-0138 (La. App. 1 Cir. 6/3/16), 196 So.3d 102, 108. The initial cause for the filing of the CINC petition was a litany of severe domestic abuse incidents perpetrated by the father against the mother in the presence of the children and substance abuse by both parents. The mother's living conditions were also unstable. These facts were ample cause for KB's and KB's removal to the maternal grandparents' care.

Once the father was incarcerated, the mother made significant improvements to her life and in her ability to care for her children. She was compliant with the conditions of Family Preservation Court and with her DCFS case plan, and upon KT's birth, KB and KB were once again allowed to live with her. She had also filed a protective order against the father. This progress proved to be short-lived, however, once the father was released from jail. The mother allowed the father to violate the protective order by moving in with him and resuming a relationship with him, then dissolved the protective order. While the conditions in the Family Preservation Court agreement signed by the mother would have allowed her to use marijuana if it were legally prescribed by a physician, the district court was apparently not persuaded by the document purported to be a medical marijuana physician referral form, and found she violated the conditions of Family Preservation Court by testing positive for THC. See *Stobart v. State through Dept. of Transp. and Development*, 617 So.3d 880, 882-83 (La. 1993).

It is clear that the destabilizing factor in the life of the mother and her children is the father. He has continually abused the mother in the presence of the children, creating a highly dangerous environment for the children. The mother's

12

substance abuse also resumed with the presence of the father in the home, and it is clear that the substance abuse occurred in the children's presence. It appeared as though the mother had bettered herself while the father was absent, but she then chose to resume the previous patterns of negative behavior by dissolving the protective order, allowing the father to live with her and their children, and resuming her use of marijuana. She actively returned to the environment for which her children were initially removed from her custody, and for this reason we find the district court was not manifestly erroneous in finding that KT is a child in need of care and granting a modification of KB's and KB's disposition.

## DECREE

The adjudication judgment of the Twenty-Second Judicial District Court, signed November 26, 2024, and judgment of disposition, signed December 17, 2024, are affirmed. Costs of this appeal are assessed to the appellant, MT.

**AFFIRMED.**