HIGGINBOTHAM, J.
lain this child in need of care adjudication, the State of Louisiana, through the Department of Children and Family Ser-yices for Terrebonne Parish (“DCFS”), seeks review of a district court judgment ordering that custody of a three-year-old boy (“J.C.”) and a two-year-old girl (“J.C.”) was to remain with the minor children’s mother (“B.C.”)[1]
FACTUAL AND PROCEDURAL HISTORY
On July 18, 2015, DCFS received a report of alleged neglect and lack of supervision concerning the boy and the girl, who were in' the custody of their mother, B.C.[2] At. that time, custody of both of the children had only recently been returned to B.C. pursuant to a final adjudication of a previous children in need of care case. The previous adjudication began after B.C. tested positive for drugs while giving birth to the girl, her youngest child, in November, 2013, which triggered the children being placed in DCFS’s temporary custody pursuant to a case plan for reunification with B.C. B.C. was eventually awarded custody of her children after successfully completing the case plan, and the case was closed by order of the Thirty-Second Judicial District Court in a judgment dated June 15, 2015, where DCFS-was relieved of custody and supervision of the children.[3] No appeal was taken from that judgment.
The. report of alleged neglect and lack of supervision received by DCFS on July 18, 2015, stemmed from a stranger finding the boy playing alone in a field while!swearing a soiled diaper, ■ one shoe, and a t-shirt, After receiving the report, DCFS initiated a new. investigation, but did not. file a petition for state custody, of the children. Instead, DCFS implemented a temporary safety plan by instanter order of the. district court on September 24, 2015, because B.C. refused to voluntarily comply with a safety plan. On September 28, 2015, the district court signed a judgment ordering B.C. to comply with an outlined five-point safety plan that was deemed necessary for the protection of her minor children’s health and safety while remaining in B.C.’s custody.[4]
*105 Thereafter, a Safety Plan Review-Hearing was held on November 6, 2015. At the hearing, DCFS informed the • court, through the testimony of a caseworker assigned to B.C.’s case, that B.C. was not cooperating with DCFS and had not accomplished the court-ordered safety plan. DCFS requested that the children be declared to be in need of care so that they could be taken into DCFS’s custody. The caseworker testified that she was unable to determine whether the children were safe due to B.C.’s noncompliance and lack.of communication. B.C. stated that she- attempted, to communicate with her caseworker and comply- with the safety plan, but explained that her work schedule interfered with her ability to meet with her caseworker and to make progress in the safety plan, B.C. denied that her children were at risk, in danger, or in need of care, testifying that her children were always supervised and had food, clothing, and shelter.
UDuring the hearing, the district court ordered that B.C. undergo a drug test, which was negative. After listening to the testimony of the caseworker and B.C., along with argument from counsel representing DCFS, the children, and B.C., the district court ruled that custody would remain with B.C. because there was no evidence that the children were at risk. The district court ordered another review hearing to take place within thirty days, admonished B.C. to cooperate with DCFS or risk losing custody of her children, and added new requirements that B.C. -contact her caseworker each week by 3:80 .p.m. every Friday and that B.C. undergo a full panel drug screen. Counsel for DCFS and counsel for the children objected to the district court’s 'ruling, but DCFS did not seek appellate review at that time. After the hearing, DCFS filed a petition alleging that the children were in need of care due to B.C.’s lack of supervision.
Oh December 11, 2015, the district court conducted a status hearing to receive an updated report concerning B.C.’s children and B.C.’s' progress toward the requirements in the court-ordered safety plan. It was stipulated that 'the caseworker for DCFS would testify consistently with the contents of the DCFS' report, which was submitted at the hearing. In the report, DCFS informed the court that, after the last hearing in November,- B-C. had .tested positive for amphetamines and marijuana. DCFS also reported that the caseworker had observed the children once (rather than weekly) at B.C.,’s home, and at that time the home appeared to.be adequate. In connection with its recently filed petition, DCFS submitted a report to the district court outlining reasons why the children are at risk and. should be taken into DCFS’s custody..
Because B.C. denied the allegations, the district court immediately held an adjudication hearing to allow testimony from B.C. to rebut the DCFS caseworker’s report and the allegations that her children are in need of bare. B.C. explained that the DCFS caseworker had been to her house and had seen that her children were | fjWell-cared for and that she had adequate food for them. B.C. testified that it had been months since she had used drugs, and the test results for amphetamine use was due to allergy medicine. B.C. explained that she was working hard to remain drug free and to support her children. She stated that she had missed a *106 meeting with her caseworker after an argument with her boyfriend, who was no longer in her life. She also 'testified about how she had trouble connecting with her caseworker over- the telephone, because she could not leave a message on the caseworker’s voicemail. B.C. testified that she was capable of caring for her children and she was willing tp continue to cooperate with DCFS and the safety plan that included taking her son to special education classes, starting mental health and substance abuse counseling, and-staying-in contact with her caseworker more- often.
After listening to B.C.’s testimony and considering DCFS’s report, as well as hearing argument from all counsel, the district court ruled that there was no evidence that the children were in danger or in need of care. While acknowledging that DCFS cannot properly supervise B.C.’s care of the children when B.C. does not fully cooperate with DCFS’s caseworker, the district court recognized that B.C.’s failure to fully comply with the court-ordered safety plan was not evidence that the children are actually in need of care or are in danger. For that reason, the district court ruled that the DCFS case should be closed, DCFS released from supervision, and the children"were to remain in the custody of B.C. A'judgment was signed on January 11, 2016, decreeing that the children were not in need of care and B.C. was to maintain custody of the children. DCFS appealed.
APPELLATE JURISDICTION
Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the" issue. Texas Gas Exploration Corp. v. Lafourche Realty Co., Inc., 2011-0520 (La.App. 1st Cir.11/9/11), 79 So.3d 1054, 1059, writ denied, 2012-0360 (La.4/9/12), 85 So.3d 698. In reasons orally [^assigned at the end of the adjudication and dispositional hearing on December 11, 2015, the district court ordered that the children were to remain in the custody of their mother, and that “the case be closed.” The minutes from that hearing, reflect that the district court “denied the State’s [pjetition to take custody of the children and find them in need of care” and further ordered that “the case be ’closed.” However, the judgment signed by the district court on January 11, 2016, simply -stated that “[t]here is no immediate danger to the children at this time; the children are not in need of care and are to remain in the custody of the mother.” Although it appears from the minutes and oral reasons that the district court intended to dismiss the case, the judgment that was signed- did not actually dispose of the case or dismiss DCFS’s petition as required by La. Ch. C. art. 666(C) (“[i]f the court finds that the evidence does not warrant an adjudication that either the child is in need of care or the family is in need of services, it shall dismiss the petition.” [Emphasis added.]).
This court’s appellate jurisdiction extends to “final judgments.” See La. Code Civ. P. art. 2083. Appeals are taken from judgments, not reasons for judgment. Davis v. Farm Fresh Food Supplier, 2002-1401 (La.App. 1st Cir.3/28/03), 844 So.2d 352, 353-54. A judgment must be precise, definite, and certain. Laird v. St. Tammany Parish Safe Harbor, 2002-0045 (La.App. 1st Cir.12/20/02), 836 So.2d 364, 365. Moreover, a final appealable judgment must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. See Carter v. Williamson Eye Center, 2001-2016 (La.App. 1st Cir.11/27/02), 837 So.2d 43, 44. These determinations should be evident from the language of the judgment *107 without reference to other documents in the record. Laird, 836 So.2d at 366. Additionally, a final appealable judgment must contain appropriate decretal language disposing of or dismissing claims in the case. See Costanza v. Snap-On Tools, 2013-0332 (La.App. 1st Cir.3/5/14), 2014 WL 886021, *4 (unpublished). Because the January 11, 2016’ judgment does not contain 17the appropriate decretal language disposing of or dismissing DCFS’s child in need of care petition, we cannot consider it as a final judgment for the purpose of an immediate appeal. See Id.; Johnson v. Mount Pilgrim Baptist Church, 2005-0337 (La.App. 1st Cir.3/24/06), 934 So.2d 66, 67.
Since the judgment lacks decre-tal language that actually dismisses DCFS’s petition, it is interlocutory. The proper procedural vehicle to -contest an interlocutory judgment is an application for supervisory writ. See La. Code Civ. P. art. 2201; Alex v. Rayne Concrete Service, 2005-1457 (La.1/26/07), 951 So.2d 138, 144. We have authority to exercise our supervisory jurisdiction and treat the appeal of this interlocutory judgment as an application for supervisory writ. State ex rel. Dept. of Social Services v. Howard, 2003-2865 (La.App. 1st Cir.12/30/04), 898 So.2d 443, 444 n. 1. The decision to convert an appeal to an application for a supervisory writ of review is within the discretion of an appellate court.[5] Stelluto v. Stelluto, 2005-0074 (La.6/29/05), 914 So.2d 34, 39. Since , this litigation would have been terminated had the district court included the proper decretal language dismissing the petition, we exercise our discretion and convert this appeal to an application for supervisory writ. Cf. Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) (per curiam). Additionally, we grant the writ application so that we may properly review the merits of this case.
CHILDREN IN NEED OF CARE
In cases involving the custody of children, the district court is vested with a vast amount of discretion. State ex rel. A.R., 99-0813 (La.App. 1st Cir.9/24/99), 754 So.2d 1073, 1077. The burden of proof on DCFS in children in need of care proceedings is set forth in La. Ch. C. art. 665, which provides that “[t]he state shall have the burden to prove the allegations of the petition by a preponderance of | sevidence.” An appellate court cannot set aside a district court’s findings of fact in a juvenile case in the absence of manifest error or unless those findings are clearly wrong. See In re A.J.F., 2000-0948 (La.6/30/00), 764 So.2d 47, 61; State ex rel. D.H., 2004-2105 (La.App. 1st Cir.2/11/05), 906 So.2d 554, 559-60. In reviewing a juvenile matter for manifest error, it is important that the appelláte court not substitute its own opinion when it is the district court that is in the unique position to see and hear the witnesses as they testify. State ex rel. S.M.W., 2000-3277 (La.2/21/01), 781 So.2d 1223, 1233. Where there is conflicting testimony, reásonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that is own evaluations and inference^' are as reasonable as those of the district court. In re A.J.F., 764 So.2d at 61; See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the district court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. See Id.
*108 The sole basis for DCFS’s. child in need of care petition was that B.C. was not fully complying with the court-ordered safety plan, making it difficult for DCFS to properly supervise the health and safety of B.C.’s children while in her care and custody. DCFS had the burden of proving that B.C.’s violation of the safety plan constituted neglect that warranted a finding that B.C.’s children were in need of care. Louisiana Children’s Code article 634(A)(3) requires that a petition’outline facts which show that the children are in need of care, “including the acts or omissions of either parent which caused or contributed to the child[ren]’s condition.” Any facts that occurred before the relevant, report of.neglect on July. 18, 2015, that led to the implementation of the court-ordered safety plan are not at issue in this appeal. After the report of neglect, DCFS alleged in its child in need of care petition that B.C. “failed to maintain contact with [DCFS] and failed to comply with the court’s [¡¡orders.” Farther, DCFS alleged that due to DCFS’s inability' to “supervise the children’s health and safety, and considering [B.C.’s].history of non-cooperation .. , these children are children in need of care.” . However, there are no specific facts alleged in the petition concerning the children’s condition that was caused by B.C.’s lack of cooperation.
Court-ordered safety plans are permitted ,if the court concludes the children’s welfare may be protected without removal from the parent’s custody. See La. Ch. C. art. 619(A)(1) and (C)(3). Once a safety plan has been ordered, a hearing shall be held by the court to determine if there are grounds for the continued implementation of the safety plan. See La. Ch. C, art. 624(A) and (D).. The court may authorize, with the consent of the state, continued implementation of a safety plan if there are reasonable ground^ to believe the children are in need of care and that the continued implementation of the safety plan is necessary for the safety and protection of the children while they remain in the parent’s home. See La. Ch. C. art. 626(E). Following a hearing, the court may return the children to the parent or place the children in the custody of the state. If the court finds that the children can safely remain in or return to the home with the implementation of a safety plan, the court may order compliance with the conditions of the safety plan. See La. Ch. C. art. 627(A) and (E). If the court determines that the issuance of a safety plan order is- not necessary to secure the Children’s- protection, the court shall issue a written order denying the request for custody or for the implementation of a safety plan. See La. Ch. C.-art. 619(C)(4). Further, at the adjudication hearing, if the court finds the evidence does not warrant an adjudication that the children are in need of care or that the family is in need of services, “it shall- dismiss the petition.” La. Ch. C. art. 666(C).
The purpose of Title VI of the Children’s Code, applicable to children in need of care proceedings, is “to protect children whose physical or mental health and hnwelfare is substantially at' risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others.... ” La. Ch. C. art. 601; State ex rel. L.B., 2008-1539 (La.7/17/08), 986 So.2d 62, 64. The health, safety, and best interest of the child shall be the paramount concern in all such proceedings. Id. A child who is the victim of neglect is in need of care. La. Ch. C. art. 606(Á)(2).‘ “Neglect” is defined as “the refusal or unreasonable failure of a parent ... to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child’s physical, mental, or emotional *109 health and safety is substantially threatened or impaired.” La. Ch. C. art. 608(18). The question’ presented in this case is whether a parent’s non-compliance with all aspects of a safety plan constitutes neglect.
Our review of the evidence does not reveal that the children were ever deprived of necessary food, clothing, shelter, care, treatment, or counseling. Further, there is no evidence that the children’s health and safety were substantially threatened or impaired by their mother’s failure to fully cooperate and communicate with her DCFS caseworker. . There is evidence that B.C. did not always communicate with her caseworker in a timely manner, but despite this difficulty, the caseworker was able to visit the children in B.C.’s home. The' caseworker reported that the children were “neat and clean in appearance[,]” “the food supply was adequate[,]” and the apartment was furnished with “bedroom furniture, but no living room furniture.” Clearly, the. children were not deprived of their basic needs regarding food, clothing, and . shelter. There is evidence that B.C. took the boy to some, but not all, of his scheduled special education sessions; however, there is no showing that this somehow substantial-: ly threatened or impaired the child’s health and safety. There is also evidence that B.C. had a positive drug test between review hearings, but on the-day of the adjudication hearing, B.C.’s ■ drug screen was negative and she indicated that she had scheduled an appointment for the next week to follow up with In her mental health/substance abuse assessment as required by the safety plan. There was no evidence that B.C.’s periodic drug use was somehow substantially threatening or impairing her children’s health and safety or resulted in B.C.’s lack of appropriate supervision concerning her children.
We have carefully reviewed the entire record. While we understand DCFS’s frustration with B.C.’s non-compliance concerning parts of the court-ordered safety plan, we must agree with the district court that there is absolutely no evidence that the children are in need of care as a'result of B.Cfs lack of full cooperation. There was no reasonable factual basis for an adjudication that B.C.’s children were in need of. care.’ DCFS failed, to meet its burden of proof and we find no error in the district court’s ruling that it was ’in the best 'interest of the children to deny DCFS’s petition and close the case.[6]
CONCLUSION
For the outlined reasons, we convert this appeal to an application for a supervisory writ of review, which we grant. However, we deny the relief requested by DCFS. AH costs in the amount of $324.50 are assessed to the State of Louisiana, through the Department of Children and Family Services for Terrebonne Parish.
APPEAL CONVERTED TO SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED.
CRAIN, J. dissents.

. The children and their parents are referred to by their initials to preserve their anonymity in this confidential proceeding. Because the children share the same initials “J.C.,” we will sometimes refer to them simply as “the boy” and “the girl” for clarity.

. The boy’s father, J.W., and the girl’s father, J.S., have never had custody of the children. Any issues surrounding the parental rights of the fathers ,are not before us in this appeal.

. The Thirty-Second Judicial District Court, in and for Terrebonne Parish, exercises juvenile jurisdiction pursuant to La. Ch. C. art. 302(2). As a court exercising juvenile jurisdiction, the district court has exclusive original jurisdiction in conformity with any special rules prescribed by law, over any child alleged to be in need of care and the parents of any such child. See La. Ch. C. arts. 303(A)(2) and 604.

.The five conditions of B.C.’s court-ordered safety plan included:
(1) [B.C.] will submit to random drug screenings as will be outlined in the [DCFS] case plan and if any drug screens come back positive [B.C.] will complete a substance abuse assessment and follow recommendations in regards to treatment.
(2) [B.C.] will continue her treatment at Ter-rebonne Behavioral Health and will follow any recommendations of treatment.
*105 (3) [B.C.] will properly supervise her young ' children at all times.
(4) [B.C.] will provide her children with adequate food, shelter, and clothing.
(5)[B.C.] will ensure that [the boy] receives proper medical/mental health care including services from Early Steps.

. Louisiana Constitution Article 5, Section 10(A) provides that a court of appeal has "supervisory jurisdiction over cases which arise within its circuit.”

. We reiterate that by denying DCFS’s petition, the district court was required by law to formally order the dismissal of the child in need of care petition. See La. Ch. C. art. 666(C).