**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**21-154**


**STATE OF LOUISIANA**

**IN THE INTEREST OF**

**G. O.**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. J-2020-133
HONORABLE ERROL DAVID DESHOTELS,  JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, John E. Conery, and D. Kent Savoie, Judges.


**APPEAL CONVERTED TO WRIT.  WRIT DENIED.**

**Gilbert J. Aucoin II,**
**Attorney at Law**
**153 South Court Street**
**Ville Platte, Louisiana 70586**
**(337) 363-2223**
**COUNSEL FOR APPELLANT:**
     **B. O. (Mother)**

**Renee Yvette Roy**
**Assistant District Attorney**
**Post Office Box 839**
**Oberlin, Louisiana 70655**
**(318) 639-2641**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**James David Miguez**
**Acadiana Legal Services**
**Post Office Box 2148**
**Lake Charles, Louisiana 70602**
**(337) 439-0377**
**COUNSEL FOR OTHER APPELLEE:**
     **G. O. (Child)**

**CONERY, Judge.**

B.O., the mother of the minor child, appeals the trial court's ruling denying B.O.'s motion to dismiss the case following a January 28, 2021 Adjudication Hearing wherein the trial court adjudicated G.O. a child in need of care.[1] For the following reasons, we convert B.O.'s appeal to an application for supervisory writs and deny the writ.

## FACTS AND PROCEDURAL HISTORY

The minor child, G.O., born on May 3, 2019, was removed from his mother, B.O., by an oral instanter order at 8:19 P.M on December 22, 2020. The affidavit in support of the Instanter Order was submitted on December 23, 2020 indicating that G.O. was removed from B.O. based on reports of neglect, dependency and lack of adequate supervision. The trial court confirmed the oral instanter order and signed the formal Instanter Order on December 23, 2020. The trial court further ordered that Acadiana Legal Services be appointed to represent the minor child G.O.

Prior to the December 22, 2020 removal of G.O., the Louisiana Department of Children and Family Services (DCFS) opened a file on B.O. in November 2020. DCFS personnel unsuccessfully attempted to locate and interview B.O., as she refused to meet and hid the child from them. Reports received by DCFS indicated that B.O. used drugs daily and did so in the presence of G.O. Further, while B.O. was living at the Country Inn Motel with her mother, G.O. was observed outside the motel room unattended and not properly clothed.

A continued custody hearing was held on December 28, 2020, after which the trial court found probable cause and sufficient evidence to support the removal of

---

[1] The initials of the child and his parents are used herein pursuant to Uniform Rules—Courts of Appeal, Rule 5-2. *See also* Uniform Rules—Courts of Appeal, Rule 5-1.

G.O from B.O. based on her neglect and dependency issues. The trial court ordered that custody continue with DCFS pending the adjudication hearing. The trial court also set an answer hearing for January 4, 2021 and an adjudication hearing for January 28, 2021. The trial court appointed the Indigent Defender Board to represent the mother, B.O., who was present at the hearing. G.O.'s father, T.M., was not present in court.

The answer hearing was held on January 4, 2021. The Child In Need of Care Petition (CINC) was filed by DCFS that same day. The CINC Petition states that, "for the reasons contained in the Affidavit" filed by DCFS on December 23, 2020 in support of the instanter removal, G.O should be adjudicated a child in need of care. The CINC Petition refers to the Affidavit in Support Of An Instanter Order dated December 23, 2020 as being attached and made part of the CINC Petition.

B.O. appeared with her court appointed counsel, who orally enrolled on her behalf, whereupon B.O.'s prior counsel orally withdrew from her representation. The father, T.M., was not present in court. However, T.M.'s mother, G.O.'s paternal grandmother, was present at the hearing and informed the trial court that T.M. would be retaining his own counsel. A denial of the CINC Petition was entered on behalf of B.O. by her new counsel. DCFS requested drug screens for both parents, and the trial court deferred ruling until the adjudication hearing on January 28, 2021. The trial court also ordered that the father, T.M., be served with the court date.

On January 20, 2021, a Motion and Order To Dismiss was filed on behalf of B.O. and was scheduled on January 28, 2021, the same date as the adjudication hearing. The motion to dismiss provided, "This Motion is based on the Affidavit in Support of Instanter Order in this case."

On January 27, 2021, DCFS filed a Supplemental Affidavit In Support Of An Instanter Order signed by Paula Bowman, a DCFS employee. The supplemental affidavit reiterated the original December 23, 2020 Affidavit In Support Of An Instanter Order. Ms. Bowman's affidavit began on November 9, 2020, when the initial report was received about B.O. by DCFS and continued until December 22, 2020 when the oral instanter order was executed and G.O. was removed from B.O.'s care. The supplemental affidavit further contained additional information from Ms. Bowman, which began on December 28, 2020 and continued until January 26, 2021, two days before the hearing on January 28, 2021.

At the beginning of the hearing on January 28, 2021, the trial court told counsel for B.O. that the adjudication hearing would continue as scheduled, and evidence would be presented. The trial court explained to her that, "If after hearing the evidence the Court finds your Motion has weight and merit, then I will consider dismissing the case, obviously."

Once again, T.M., the father of G.O., was not present at the hearing, having never appeared at any of the previous proceedings in this case, despite DCFS's attempts to serve him at his only known address in Oakdale, Louisiana. T.M.'s mother, G.O.'s paternal grandmother, was also not present at the hearing.

Ms. Bowman, the affiant in both affidavits submitted in this case, was the first witness called to testify at the adjudication hearing. Ms. Bowman testified that, after the removal of G.O., an investigation had been conducted and completed. Ms. Bowman testified that she had personally spoken to B.O.'s maternal grandmother and grandfather, as well as B.O.'s mother, aunt, and present boyfriend.

DCFS Supervisor Tarshell Reed testified that she interviewed B.O. and her then boyfriend with whom B.O. was living at the time. Based on the testimony of

both Ms. Bowman and Ms. Reed, it was established that B.O. had an issue of dependency on illegal substances, and admitted to Ms. Reed that she used methamphetamines, but not THC. B.O.'s boyfriend admitted that he used THC. Both he and B.O. were sent by Ms. Reed for an initial drug screen at SouthStar Urgent Care, but left before the drug screen could be completed. DCFS documented that B.O.'s mother is also a substance abuser, and B.O. acknowledged that she had been removed from her mother's care by DCFS due to her mother's drug dependency.

Further, testimony indicated that B.O. has no stable home or place of abode, as it was determined she was living between three different places, her maternal grandmother's home, the home of her boyfriend, and the Country Inn Motel. Due to her different places of residence, DCFS was unable to do an adequate home inspection.

Ms. Reed also testified regarding DCFS's determination that the maternal grandmother's home was not a proper source of placement due to the number of people living in the home. The maternal grandfather was no longer residing in the home, based on his drug use and a protective order filed against him by his wife, B.O.'s grandmother. However, the residence was still too small to properly house the grandmother, B.O., G.O., and two other minor children.[2]

Ms. Bowman testified that B.O. does not have a stable source of income. However, B.O. indicated in her interview with Ms. Reed that the child's father, T.M., had acknowledged G.O., and "supports the child financially by giving her money for him."

---

[2] The two minor children are the brother and sister of B.O. who were previously removed by DCFS from the care of B.O.'s mother due to her substance abuse problems.

4

There was also testimony by Ms. Reed indicating that B.O. failed to properly supervise G.O. by leaving her in the care of her mother who is not suitable to care for the child due to her drug use. Ms. Reed further testified that B.O.'s mother told her she uses drugs and was found with drugs which she turned over to the police. Additionally, Ms. Reed cited video from the Country Inn Motel security cameras which, she explained, showed G.O. outside the motel's rooms unsupervised. Ms. Reed offered to have the jump drive of the video from the Country Inn Motel brought from her office to the hearing, but after a discussion, counsel for B.O. did not insist it be shown. DCFS rested its case. B.O. did not submit any evidence or call any witnesses to testify.

The trial court ruled from the bench and stated as follows:

> All right. The Court views the evidence that is presented and finds that sufficient proof has been - - that the State has met is burden, justifying that the minor child [G.O.], be found a child in need of care. The Court encourages the Agency to implement any case plan that will address some of the issues that were raise[d] or some of the issues that are concerned. And that the goal is to reunify this child with his parent.

The trial court then scheduled the matter for a first case review hearing on May 4, 2021. The trial court, upon a request by counsel for DCFS, denied the Motion to Dismiss filed by B.O. It is this denial of B.O.'s Motion to Dismiss by the trial court on the record at the January 28, 2021 adjudication hearing that is the basis of this appeal by B.O, although the substance of B.O.'s assignments address the merits of the adjudication as well.

## JURISDICTION

On review, we observe that the record contains no written judgment of disposition reflecting the trial court's denial of the motion to dismiss nor its

adjudication of the child in need of care.[3] Despite the lack of a formal judgment resulting from the hearing, we choose not to dismiss this appeal. We note that the record includes the State's filings regarding the child in need of care allegations, the detailed affidavits in support thereof, and the transcript from the child in need of care hearing. The latter reflects the trial court's rulings on both the adjudication and the denial of the motion to dismiss, as do the minutes from that hearing. In consideration of the exigencies of the ongoing matter involving a child in need of care, we instead convert the appeal to an application for supervisory writs and review the application under our supervisory authority rather than dismiss the appeal. *See* La.Const. art. 5, § 10. *See also State in the Interest of Z.D.*, 17-2118 (La. 9/14/18), 251 So.3d 1086 (wherein the supreme court reversed the dismissal of an appeal in a child in need of care matter and instructed the fourth circuit to convert the appeal to an application for supervisory writs and consider the application on the merits) (citing *Stelluto v. Stelluto*, 05-0074 (La. 6/29/05), 914 So.2d 34); *State in the Interest of J.C.*, 16-0138 (La.App. 1 Cir. 6/3/16), 196 So.3d 102.

## ASSIGNMENT OF ERROR

B.O. asserts the following assignment of error:

The trial court committed manifest error in finding G.O. to be a child in need of care, under Louisiana Children's Code Article 601 since:

---

[3] Louisiana Children's Code Article 330, titled "Judgments appealable," provides:

A. An appeal may be taken from any final judgment of a court and shall be to the appropriate court of appeal.

B. In delinquency proceedings pursuant to Title VIII, child in need of care proceedings pursuant to Title VI, and families in need of services proceedings pursuant to Title VII, an appeal may be taken only after a judgment of disposition. The appeal shall include all errors assigned concerning the adjudication and disposition.

A.) There was a lack of allegations of fact in the petition filed by the State.

B.) There was no showing that B.O. abused her child.

C.) There was no evidence showing that B.O. neglected her child.

## LAW AND DISCUSSION

### *Standard of Review*

In the case of *State in the Interest of S.C.*, 16-740, p. 2 (La.App. 3 Cir. 4/19/17), 217 So.3d 642, 644, the standard of appellate review in child in need of care cases was identified as follows:

> "We review the juvenile court's findings of fact under the manifest error standard of review[.]" *State ex rel. J.Y.M.*, 09-1335, p. 5 (La.App. 3 Cir. 8/4/10), 45 So.3d 1128, 1132. In *State ex rel. D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560, the first circuit noted:
>
> > [I]t is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. [*In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.] Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. *Id.*; *see Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*; *see Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270.
> >
> > In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly

7

erroneous or clearly wrong. *Id.*

### *Burden of Proof*

At an adjudication hearing, the state bears the burden of proving by a preponderance of the evidence that the child is a child in need of care. La.Ch.Code art. 665; *State ex rel. L.B.*, 08-1539 (La. 7/17/08), 986 So.2d 62. It is not the state's duty "to prove its case beyond a reasonable doubt, by clear and convincing evidence, or to disprove every hypothesis of innocence." *State ex rel. L.B*, 986 So.2d at 64.

Before addressing B.O.'s assignments of error, this court notes that this is not a case of termination of parental rights and that DCFS's intention is to implement a case plan to address B.O.'s issues. Further, reunification remains the goal for B.O. and her minor child G.O. As cited below in La.Ch.Code art. 601, which is the basis of B.O.'s assignments of error, Article 601's purpose is to "provide the greatest possible protection as promptly as possible." Further, "[t]he health, safety, and best interest of the child shall be the paramount concern in all proceedings under this Title." *Id.*

In her assignment of error, B.O. states that the trial court committed manifest error in finding that G.O. was a child in need of care under La.Ch.Code art. 601, which provides:

> The purpose of this Title is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts. The proceedings shall be conducted expeditiously to avoid delays in achieving permanency for children. This Title is intended to provide the greatest possible protection as promptly as possible for such children. The health, safety, and best interest of the child shall be the paramount concern in all proceedings under this Title. This Title shall be construed in accordance with Article 102. This Title

shall be administered and interpreted to avoid unnecessary interference with family privacy and trauma to the child, and yet, at the same time, authorize the protective and preventive intervention needed for the health, safety, and well-being of children.

*Lack Of Allegations in the Petition*

In subpart (A) of B.O.'s assignment of error, she contends that the CINC Petition filed by DCFS contained a lack of allegations in support of its position that G.O. was a child in need of care. However, the CINC Petition clearly states that, "for the reasons contained in the Affidavit" filed by DCFS on December 23, 2020 in support of the instanter removal, G.O should be adjudicated a child in need of care. The CINC Petition refers to the affidavit as being attached and made part thereof. The affidavit submitted by Ms. Bowman and filed December 23, 2020, specifically stated that G.O. was a child in need of care based on "**Neglect; Dependency and Lack of Adequate Supervision.**" Details supporting those bases were contained in the affidavit attached to the petition.

In the Continued Custody Hearing Order of January 12, 2021, the trial court found:

> [R]easonable grounds to believe the child[] to be in need of care and that continued custody is necessary for the [child's] safety and protection. Court finds that it is contrary to the welfare and not in the best interest of the child[] to remain in the home based on the following: **Due to Neglect and Dependency issues on (sic) the mother, Ms. [B.O.]**

(Emphasis added.)

Accordingly, we find that subpart (A) of B.O.'s assignment of error to be without merit.

*Abuse of G.O.*

B.O. in subpart (B) of her assignment of error contends, "There was no showing that B.O. abused her child." As previously indicated, the allegations against

9

B.O. as contained in the aforementioned affidavit and attached to the CINC Petition were neglect, dependency, and lack of adequate supervision. DCFS did not list physical abuse as a factor for removal, nor does it contend that B.O. physically abused the child. Therefore, B.O.'s argument in this regard is not relevant.

### *No Showing of Neglect*

In subpart (C) of her assignment of error, B.O. contends, "There was no evidence showing that B.O. neglected her child." The grounds for finding that a child is in need of care are contained in La.Ch.Code art. 606, which states in pertinent part: "A. Allegations that a child is in need of care must assert one or more of the following grounds …. (2) The child is a victim of neglect."

Louisiana Children's Code Article 603(18) defines "Neglect" as

> [T]he refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care treatment, or counseling for any injury, illness or condition of the child as a result of which the child's physical, mental or emotional health and safety is substantially threatened or impaired.

Adjudication of a child in need of care is warranted when a parent shows a repeated pattern of placing a child at risk and exposing a child to a lack of shelter. *State ex rel. AR*, 99-813 (La.App. 1 Cir. 9/24/99), 754 So.2d 1073.

At the adjudication hearing, Ms. Bowman testified that B.O. does not have a stable home, stable job, or stable income and that placement with any of her relatives was not immediately available due to drug use in the homes of B.O.'s relatives. Ms. Reed testified that she interviewed both B.O. and her boyfriend and addressed the subject of substance abuse. B.O. stated she used methamphetamines but not THC. Her boyfriend indicated that he would test positive for THC. B.O. indicated she was living with her boyfriend and also staying with her maternal grandmother, so DCFS was unable to determine any stable address at which to conduct a home study. Ms.

Reed testified there was an incident where G.O., then an eighteen month old infant, wandered to a nearby park alone. This report was one of the initial complaints received and contained in the Affidavit in Support of Instanter Removal. Finally, B.O. admitted to leaving G.O. with her mother, a known substance abuser, and acknowledged that she was removed from the custody of her mother by DCFS due to dependency.

Given this testimony presented at the adjudication hearing and the lengthy and detailed affidavits supporting removal and adjudication as a child in need of care, we find that the trial court was not manifestly erroneous in finding that G.O. was a child in need of care based on neglect. Subpart (C) of B.O.'s assignment of error is, therefore, also without merit.

## CONCLUSION

Considering the foregoing reasons, B.O.'s appeal is converted to an application for supervisory writs, and the writ is denied.

**APPEAL CONVERTED TO WRIT. WRIT DENIED.**