# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CJ 0024

## STATE OF LOUISIANA

## IN THE INTEREST OF E.J.W.

*Judgment Rendered:* **AUG 0 4 2025**

\*\*\*\*\*\*\*\*

21ˢᵗ Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Suit No. J-20030

The Honorable Blair Edwards and Mary Devereux, Presiding

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

| | |
|---|---|
| Brett K. Duncan<br>Christen Abels<br>Hammond, Louisiana | Counsel for Appellant<br>L.G. (father) |
| Amanda James<br>Hammond, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Christopher Strickland<br>Livingston, Louisiana | Counsel for Appellee<br>E.J.W. (minor child) |
| Laura G. Slocum<br>Livingston, Louisiana | Counsel for Appellee<br>State of Louisiana, Department of<br>Children and Family Services |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

BEFORE: McCLENDON, C.J., LANIER, AND BALFOUR, JJ.

**LANIER, J.**

The appellant, L.G., father of the minor child E.J.W., appeals the adjudication/disposition judgment of the Twenty-First Judicial District Court, adjudicating E.J.W.[1] to be a Child in Need of Care (CINC), ordering E.J.W. to remain in custody of the State of Louisiana, Department of Children and Family Services (DCFS), and approved the case plan submitted by DCFS. For the following reasons, we affirm.[2]

## FACTS AND PROCEDURAL HISTORY

On September 7, 2023, the State of Louisiana filed an instanter order seeking removal of E.J.W. from his parents' custody and placement of provisional custody with DCFS. DCFS attested through affidavit that on September 4, 2023, a report of neglect concerning E.J.W. as a drug-affected newborn was received. Shortly after birth, a drug test was performed on E.J.W., with the result indicating he was positive for cocaine and amphetamines. The mother, V.W., stated that E.J.W.'s father is L.G., but that L.G. did not sign the birth certificate since his sister had power of attorney over him. L.G.'s sister refused to let L.G. sign the birth certificate until a DNA test proved he was E.J.W.'s father.

According to the affidavit of Jessica Kirkland, DCFS investigator, V.W. admitted she had used tetrahydrocannabinol (THC) during the pregnancy, but denied using cocaine and amphetamines. L.G. stated that he was aware that V.W. had used THC during the pregnancy, and both admitted that the THC used by V.W. was laced with other substances. V.W. stated she did not have a crib, bassinet, bottles, or any other items needed to care for an infant. She further stated

---

[1] The minor child and his parents are referred to by their initials to preserve their anonymity in this confidential proceeding. See Uniform Rules—Courts of Appeal, Rule 5-2.

[2] This court has jurisdiction over these proceedings subject to La. Ch.C. art. 330. The article provides that in CINC proceedings, an appeal may be taken only after judgment of disposition, and the appeal shall include all errors assigned concerning adjudication and disposition. See *State in Interest of A.S.*, 2019-0248 (La. App. 1 Cir. 9/4/19), 285 So.3d 1129, 1134.

2

that L.G. was supposed to buy these items, but that he was not allowed to do so until his paternity was proven. Both V.W. and L.G. stated that they did not have any family or friends that could assist in caring for E.J.W., and stated further that they did not want L.G.'s family involved. On August 31, 2023, V.W.'s parental rights were terminated as to another child of hers due to neglect, inadequate shelter and supervision, and drug use.

Based on the above facts, DCFS asserted that there was good cause to believe E.J.W.'s safety and well-being were endangered while in the care of his parents, and that it was in E.J.W.'s best interest to be temporarily placed in the custody and care of the state through DCFS. A minute entry dated September 7, 2023 indicates the district court found probable cause for E.J.W.'s removal, ordered that E.J.W. be continued in the state's custody, and ordered a paternity test for L.G. L.G. took a paternity test on October 3, 2023, and the results revealed that L.G. is E.J.W.'s biological father. On the same date of that determination, the state filed a petition to declare E.J.W. as a child in need of care (CINC petition). On October 17, the state filed a motion for judicial determination that reunification efforts are not required as to V.W. only.

On October 30, 2023, an answer hearing to the CINC petition was held, where L.G. denied the allegations.[3] An adjudication hearing was set for November 30, 2023. On November 27, 2023, the state filed a motion and order for a clinic assessment, individual diagnostic interview, and psychological testing to assess the mental capacity, intellectual functioning, I.Q., and parental ability of L.G. A hearing on the motion was set for December 14, 2023. The adjudication hearing set for November 30, 2023 was continued to January 11, 2024, so that the aforementioned testing could be administered to L.G.

---

[3] Although L.G.'s paternity had been definitively determined through a DNA test, the judgment from the answer hearing does not specifically indicate this. Further, L.G. has not denied that he is E.J.W.'s father.

3

At the adjudication hearing, L.G. confirmed he complied with all testing and assessments, but that the results were still pending. V.W. stipulated that E.J.W. was a child in need of care as to herself only, and the district court found reasonable grounds for E.J.W.'s removal. Adjudication of E.J.W. as to L.G. was continued to February 22, 2024, and then to March 28, 2024, as L.G.'s test results were still pending. On that date, as to V.W., the court approved a permanency plan of adoption.[4] Adjudication of E.J.W. as to L.G. was continued to April 18, 2024. The district court received L.G.'s psychological evaluation on April 11, 2024. In the evaluation, clinical psychologist Dr. Brandon Romano diagnosed L.G. as having a mild intellectual disability. Dr. Romano recommended that L.G. receive professional services to address parenting skills, and estimated that L.G.'s prognosis would be "poor" if no intervention occurred.

On April 18, 2024, the district court held an adjudication hearing and a disposition hearing. The district court adjudicated E.J.W. as a child in need of care as to L.G. and ordered that it was in the best interest of E.J.W. to remain in the state's custody through DCFS. The district court signed a written judgment approving DCFS's case plan and approving DCFS's permanent plan for E.J.W.'s reunification with L.G.[5] The judgment also ordered DCFS to provide L.G. a simplified case plan. On April 29, 2024, the district court signed a written judgment of adjudication and disposition, adjudicating E.J.W. as a child in need of care as to L.G., and ordering DCFS's continued custody of E.J.W. as the least restrictive disposition consistent with the circumstances of the case.

According to the state's brief, there was a delay in forwarding the adjudication/disposition judgment to the signing judge, which is why both judgments, although rendered on April 18, 2024, were signed eleven days apart.

---

[4] VW's parental rights as to E.J.W. were subsequently terminated on July 25, 2024.

[5] While Judge Blair Edwards is the judge of record in this case, Judge Mary Devereux, *ad hoc*, presided over the April 18, 2024 adjudication hearing.

On August 26, 2024, L.G. filed a motion to dismiss the case review and permanency judgment of April 18, 2024, but the motion is silent as to the adjudication/disposition judgment of April 29, 2024, since it was not filed into the record until August 27, 2024.

On September 23, 2024, after receiving notice of the judgment of adjudication and disposition, L.G. filed a motion for appeal of that judgment.

## ASSIGNMENTS OF ERROR

L.G. submits the following assignments of error:

1. The district court erred in finding good cause to justify granting four continuances in the adjudication against L.G. resulting in his trial not commencing until 190 days after the filing of the CINC petition.

2. The district court erred in dismissing the September 19, 2024 motion for new trial despite counsel for L.G. having not received a notice of judgment as of the date of filing.

3. The district court erred in admitting substantial and prejudicial hearsay evidence during L.G.'s adjudication.

4. The district court erred in adjudicating E.J.W. to be in need of care as to L.G. for dependency despite the lack of verified and factual proof and admissible evidence.

5. The district court erred in determining DCFS made reasonable efforts without consideration of the Americans with Disabilities Act (ADA), to reunify L.G. and the child or finalize the child's placement with L.G. in an alternative safe and permanent home, namely the home of the paternal aunt, E.G.

6. The district court erred in finding that maintaining the child in state custody was the necessary disposition to ensure the child's safety and protection without the consideration of any reasonable and less restrictive alternatives.

7. The district court erred in approving the case plan and finding DCFS made reasonable efforts at the adjudication/disposition hearing for L.G. without any consideration for compliance with the ADA.

8. The district court deprived L.G. of due process with respect to his fundamental right of family integrity in failing to require DCFS to employ the least restrictive and most appropriate permanent plan for the family.

5

**DISCUSSION**

As to assignment of error number one, L.G. argues the district court did not have good cause to continue the adjudication hearing four times, resulting in undue delay and a violation of L.G.'s due process.

Louisiana Children's Code article 659(A) states, in part, that if a child is placed in continued custody, the adjudication hearing shall commence within forty-five days of the filing of the CINC petition. However, Paragraph (B) allows, upon a showing of good cause, a continuance of the proceeding in extraordinary circumstances. The hearing may be continued for up to five additional days, and the district court in its order must set out the particular facts justifying the continuance. Paragraph (C) states that if the hearing has not been timely commenced, upon motion of the child, the district court shall release the child in continued custody.

As stated, on October 11, 2023, a CINC petition was filed on behalf of E.J.W. While the adjudication/disposition hearing was first set for November 30, 2023, the state filed its motion for clinic assessment, psychological testing, intellectual functioning, I.Q., and parental ability of L.G. three days before the hearing. The minutes of November 30, 2023 reflect that L.G. was unsure if he had been served with the motion, and the clerk stated that it would attempt to serve L.G. once again. The state moved to continue the adjudication/disposition hearing to January 11, 2024, which the district court granted. No objection by L.G. to the motion for continuance is noted in the minutes.

At the January 11, 2024 hearing, the minutes reflect that L.G.'s sister, E.G., who is his caretaker, stated that L.G. was unable to take care of himself, much less an infant. An I.Q. evaluation and parental competency evaluation, which were requested by the state in its motion, had been conducted, but the results had not yet been released to DCFS. The district court ordered that E.J.W. remain in the

6

custody of the state, and the adjudication/disposition hearing was reset for February 22, 2024. L.G. received notice in court, and no objection by L.G. to the continuance is noted in the minutes.

On February 22, 2024, the district court was notified that the results of the parental competency evaluation were still pending, and that L.G. could not make a stipulation until he received the results of his evaluation. The adjudication/disposition hearing was again reset to March 28, 2024, and L.G. received notice of the hearing in open court. No objection by L.G. to the continuance is noted in the minutes.

On March 28, 2024, the state filed the parental competency evaluation results and its case plan into the record.[6] The minutes of the March 28, 2024 hearing indicate that Summer Martin, a DCFS foster care worker, testified that DCFS was evaluating E.G.'s home as a possible placement for E.J.W., and that the goal of L.G.'s case plan was reunification. Results for L.G.'s psychological evaluation were still pending. The district court ordered the state's custody of E.J.W. be maintained, and the hearing was reset for April 18, 2024. L.G. received notice of that date in open court, and the minutes do not reflect an objection by L.G. to the continuance.

On April 18, 2024, after reviewing all of L.G.'s psychological evaluation results, the district court adjudicated E.J.W. as a child in need of care as to L.G. The court ordered DCFS to simplify the case plan so that L.G. could follow it. Custody of E.J.W. was ordered to remain with the state, and a review date was set for September 5, 2024.

We agree with L.G. that the adjudication/disposition hearing occurred beyond the required forty-five day period of La. Ch.C. art. 659(A). However,

---

[6] While the minutes indicate a parental competency evaluation was filed, it is not contained in the record on appeal.

Paragraph (C) states that *upon motion of the child*, the district court shall release a child from continued custody and dismiss the CINC petition if the hearing does not commence within the forty-five day delay. The record contains no such motion filed on behalf of E.J.W. While the term "extraordinary circumstances" is not defined by La. Ch.C. art. 659, we find that the circumstances in the instant case warranted the continuances. The district court was seeking to accommodate L.G. by continuing the adjudication/disposition hearing until all the evaluation results had been received, so that the district court could make the most informed decision possible concerning L.G.'s ability to follow a case plan. Furthermore, L.G. did not make a contemporaneous objection to any of the continuances of the adjudication/disposition hearing. The first assignment of error is without merit.

In the second assignment of error, L.G. argues that his motion for new trial should not have been dismissed, since he had not received notice of the April 29, 2024 judgment as of the date of filing the motion for new trial. The motion for new trial was argued in open court on September 19, 2024, and that the district court denied the motion in open court on October 3, 2024. A written denial of the motion for new trial was filed on October 18, 2024. The judgment on the motion for new trial states that the motion was denied. While the denial of a motion for new trial is an interlocutory judgment that is not immediately appealable, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings, including the denial of a motion for new trial, in addition to the review of the final judgment. See *Jackson v. Wise*, 2017-1062 (La. App. 1 Cir. 4/13/18), 249 So.3d 845, 850, writ denied, 2018-0785 (La. 9/21/18), 252 So.3d 914.

The motion for new trial was filed on October 21, 2024. The judgment of adjudication and disposition was signed on April 29, 2024. Although such a motion for new trial is facially untimely, the record does not contain proof that

8

notice of judgment was mailed to L.G., as required by La. C.C.P. art. 1913(A). Louisiana Code of Civil procedure article 1974 provides "A party may file a motion for new trial not later than seven days, exclusive of lE.G.al holidays, after the clerk has mailed or the sheriff has served the notice of judgment as required by Article 1913." As there is no proof of mailing or service of notice of judgment on L.G., L.G.'s motion for new trial appears to be timely. See *Bell v. Demax Management Inc.*, 2002-0618 (La. 5/24/02), 819 So.2d 293. We therefore must address the merits of the motion for new trial, and will do so in our discussion of the fourth assignment of error.

In the third assignment of error, L.G. argues that the district court's admission of Dr. Romano's psychological evaluation of L.G., which was then partially read aloud by Ms. Kirkland at the adjudication/disposition hearing, was erroneous as it was hearsay. At the hearing, just before Ms. Kirkland read from the psychological evaluation, counsel for L.G. objected to the evaluation as hearsay, since Ms. Kirkland did not author the evaluation. Ms. Kirkland then read one line from the psychological evaluation, stating it is more likely than not that L.G. was incapable of providing adequate care for E.J.W. The district court then admitted the psychological evaluation into evidence over objection by L.G.'s counsel.

The applicability of the rules of evidence during "child in need of care" proceedings depends on the stage at which the evidence is being submitted. For example, at the continued custody hearing, "hearsay evidence is admissible." La. Ch.C. art. 624(G) and (F). At the disposition hearing (after the child has been adjudicated as a child in need of care), the rules of evidence are not applicable. La. C.E. art. 1101(C)(3). In fact, at the disposition hearing, under La. Ch.C. art. 680, a court "may consider evidence which would not be admissible at the adjudication hearing," including hearsay. *State ex rel. D.H.*, 2004-2105 (La. App. 1 Cir.

9

2/11/05), 906 So.2d 554, 562.  However, at the adjudication hearing, the rules of evidence are fully applicable. *Id.*

Hearsay evidence is testimony in court, or written evidence, of an out-of-court statement offered as an assertion to show the truth of matters asserted therein. La. C.E. art 801(C); *State v. Farrar*, 374 So.2d 1204, 1205 (La. 1979). Hearsay evidence is inadmissible, except as provided by law. La. C.E. art. 802. In the instant case, the statement given by Ms. Kirkland constitutes hearsay because the statement was read from a document authored by Dr. Romano and not Ms. Kirkland, and was asserted to be true. Dr. Romano was not present at the hearing. The statement therefore fits the definition of hearsay.

However, despite the introduction of the aforementioned hearsay evidence, Ms. Kirkland did testify to things of her own knowledge that we find justify an adjudication of E.J.W. as a child in need of care as to L.G. She was aware that E.J.W. was a drug-exposed newborn, and that L.G. and V.W. were E.J.W.'s parents. She stated that DCFS validated an allegation of dependency against L.G. because he was unable to care for a child due his significant developmental delays. She testified that both L.G. and members of his family admitted that they did not believe he was capable of meeting his own needs, let alone an infant's. L.G. did not object to any of this testimony.

Ms. Kirkland further testified that to her knowledge, L.G. has never maintained a household on his own, and that he has always had to rely on a family member. At the time of the hearing, he was living with V.W. Ms. Kirkland's interview with L.G. revealed that he could not answer her questions without V.W.'s assistance. When she asked L.G. if E.J.W. was born with cocaine and amphetamines in his system, he stated he was unsure, but that he knew V.W. used marijuana that may have been laced with other drugs. Ms. Kirkland's assessment of L.G.'s and V.W.'s living conditions was that they lived in a small camper that

10

was not adequate for an infant. Ms. Kirkland indicated that there was no safe place for an infant to sleep, and the few baby items that were present were dirty and appeared to have been used by others.

Furthermore, the district court received a Court-Appointed Special Advocate (CASA) report filed into the record on March 21, 2024, which also advised that L.G.'s living conditions were not appropriate for an infant, and that L.G. had tested positive for cocaine on a drug screen. There was no objection by L.G. as to the CASA report. The district court also had access to Dr. Romano's evaluation prior to the adjudication/disposition hearing. We find the abundant non-hearsay evidence outweighs any prejudicial effect the hearsay evidence may have had against L.G., if any. The district court's adjudication of E.J.W. as a child in need of care as to L.G. is therefore maintained.

In the fourth assignment of error, L.G. argues that the district court erred in adjudicating E.J.W. to be a child in need of care as to him, and in his motion for new trial, argues that the judgment of adjudication and disposition is "contrary to law and evidence, particularly La. Ch.C. art. 606(A), *et seq.*" In cases involving the custody of children, the district court is vested with a vast amount of discretion. The district court is in a better position to evaluate the best interest of a child because of its superior opportunity to observe the parties and the witnesses who testified at the trial. It is well settled that an appellate court cannot set aside a district court's findings of fact in the absence of manifest error or in the clearest case of abuse of the district court's great discretion.

The two-part manifest error test considers: (1) whether there is a reasonable factual basis in the record for the finding; and (2) whether the record further establishes that the finding is not manifestly erroneous. If a reasonable factual basis exists, an appellate court may set aside a district court's factual finding only if, after reviewing the record in its entirety, it determines the district court's finding

11

was clearly wrong. Moreover, where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. Even though an appellate court may feel that its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *State of Louisiana in the Interest of C.S., L.K., and R.K.*, 2023-1166 (La. App. 1 Cir. 2/23/24), 2024 WL 744375, *2 (unpublished opinion).

As stated above, the district court heard valid evidence of L.G.'s paternity of E.J.W., his cognitive ability, his relationship with V.W., their living conditions, and his inability to care for himself, much less an infant. The district court therefore had a reasonable basis for finding that E.J.W. was a child in need of care as to L.G., and our review of the record establishes that the district court's finding is not clearly wrong. As for the motion for new trial, the standard of review of a judgment on a motion for new trial is that of abuse of discretion. *Wood v. Humphries*, 2011-2161 (La. App. 1 Cir. 10/9/12), 103 So.3d 1105, 1116, writ denied, 2012-2712 (La. 2/22/13), 108 So.3d 769. Since the motion for new trial does not present any new law or evidence applicable to the instant case and does not specifically state how the district court's adjudication was contrary to law and evidence, we conclude that the district court did not abuse its discretion in denying the motion for new trial. The fourth assignment of error is therefore without merit.

Although the fifth assignment of error allE.G.es the district court's noncompliance with the ADA in making reasonable efforts to reunify E.J.W. with L.G., his argument in brief makes no mention of the ADA at all; rather, L.G. argues that the district court erred in placing E.J.W. with non-relative foster parents instead of E.G., who he considers to be the best temporary placement for E.J.W.

12

Moreover, L.G. has not raised the purported violations of the ADA with the district court.

At the time the instanter order was filed, L.G.'s paternity of E.J.W. had not been established. In fact, E.G., who had power of attorney over L.G., instructed him not to sign E.J.W.'s birth certificate. A continued custody hearing was set for September 7, 2023. During that time, E.J.W. had no relative placement options from neither L.G.'s nor V.W.'s family. At the continued custody hearing, L.G., although purported to be E.J.W.'s father by V.W., still had not admitted paternity nor had yet taken a DNA test to prove paternity. Furthermore, both L.G. and V.W. stated they did not want L.G.'s family to be involved. With the status of relative placement unchanged, the district court had no other choice but to place E.J.W. in the state's custody.

DCFS placed E.J.W. with non-relative foster parents that were found to be suitable for the care and security of E.J.W. These foster parents also had temporary custody of E.J.W.'s half-sibling. Once L.G. was determined to be E.J.W.'s father on October 11, 2023, E.J.W. had been with the foster parents for approximately one month. In a CASA report dated September 4, 2024, received by the district court without objection, E.G. allegedly stated to the CASA volunteer that L.G. and V.W. were no longer living together. The CASA volunteer told E.G. that L.G. had said he had temporarily moved in with E.G. because their camper needed repairs, and would move back in with V.W. as soon as the repairs were completed. E.G. replied that L.G. misspoke, and that he was permanently living with her. The CASA volunteer then told E.G. that her home would be assessed, and that all its residents would undergo a background check.

E.G. further stated that she had taken a year sabbatical from her job in order to support L.G. She also stated that she would be willing to adopt E.J.W. "if it came down to it." When CASA expressed to DCFS E.G.'s desire to be a possible

placement for E.J.W., DCFS stated that E.G. had never before expressed to them her desire to be a placement or a caregiver for E.J.W. At a permanency hearing on October 3, 2024, L.G.'s case plan was changed from reunification to adoption.[7] E.G., who was present at the hearing, spoke to the district court on her own behalf. The district court then ordered a home study of E.G.'s residence be completed by DCFS, and DCFS stated that E.G. and L.G. could visit with E.J.W. together. This is the last court appearance contained in the record.

The record indicates that after L.G. filed his appeal, the district court took E.G. under consideration as a possible relative placement for E.J.W. Although the result of the home study of E.G.'s residence is not contained in the record, it is clear that the district court has in fact taken E.G. under consideration as a possible foster placement for E.J.W., rendering the fifth assignment of error moot. The sixth assignment of error, which complains that the district court erred in maintaining the state's custody without considering less restrictive placement with relatives, is also moot for the same reasons.

The seventh assignment of error affirmatively makes the argument that DCFS failed to abide by the ADA in formulating a case plan, and the district court erred in approving that case plan. Essentially, L.G. argues that DCFS used his intellectual disability as the basis for removing E.J.W. from his custody and placing E.J.W. with non-relatives, rather than members of his own family. We disagree.

Again, L.G. and his family were not initially a possible placement for E.J.W. for the reasons stated above. DCFS removed E.J.W. from V.W.'s custody because he was a drug-affected infant, and V.W. lost the parental rights to her other child for the same reason. L.G. lived with V.W., was aware of her drug use, and tested

_____

[7] The instant appeal predates this change in L.G.'s case plan, and thus he has not raised any arguments against this action by the district court.

14

positive for cocaine himself. The camper in which they lived was found to be inadequately furnished for the caring of an infant. All of these reasons, which were discovered through DGFS's investigations and submitted to the district court, have nothing to do with L.G.'s intellectual disability.

Moreover, the psychological evaluation of Dr. Romano recommended that L.G. receive professional services to address his parenting skills, that information should be presented to him in a simplified manner, and that he be referred to Louisiana Rehabilitation Services for vocational assistance. DCFS amended its case plan for L.G. to add the services recommended by Dr. Romano, and reviewed the case plan with L.G. in a simplified manner, with E.G. present. It was explained to L.G. that, pursuant to the ADA, he had one year to work his case plan. The district court approved all case plans submitted by DCFS.

Based on the findings of DCFS, we find the recommendations made to the district court in the implementation of a case plan for L.G. to be reasonable and not in violation of the ADA. See State in the Interest of N.B., 2022-0596 (La. App. 1 Cir. 12/16/22), 2022 WL 17729229, *5-6 (unpublished opinion), writ denied, 2023-00058 (La. 2/24/23), 356 So.3d 339. The seventh assignment of error is without merit.

In the eighth and final assignment of error, L.G. argues that he was deprived of due process with respect to his right to family integrity when the district court failed to employ the least restrictive case plan for E.J.W. The integrity of the family unit has found protection in the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and in the Ninth Amendment of the U.S. Constitution. A parent is entitled to a hearing on his fitness as a parent before his children are taken from him and that, by denying him a hearing, the state denies the parent his right of due process. See Stanley v. Illinois, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211 (1972); see also Kinnett v. Kinnett, 2023-00060 (La. 6/27/23), 366

15

So.3d 25, 29, cert. denied, 144 S.Ct. 493, 217 L.Ed.2d 258 (2023). We disagree that L.G.'s due process rights were violated. Throughout the course of the instant case, L.G. has not been prohibited from visitation with E.J.W., and his due process right of maintaining a relationship with E.J.W. has been upheld. See *Foret v. Serrano*, 2023-1034 (La. App. 1 Cir. 4/30/24), 395 So.3d 876, 882-833.

L.G. has been present at the hearings in the instant matter since the 72-hour CINC continued custody hearing on July 7, 2023, even though his paternity for E.J.W. had not yet been determined. At the adjudication/disposition hearing, L.G. was afforded the opportunity to call witnesses and introduce evidence, although on the hearing date of April 18, 2024, L.G. chose not to testify on his own behalf, did not call any witnesses, and did not submit evidence. The DCFS case plan dated October 10, 2023, which was signed by L.G., granted him weekly supervised visitation with E.J.W. for one hour. Another DCFS report dated March 20, 2024 indicated that L.G.'s visitation with E.J.W. was ongoing and regular. In the case plan dated February 27, 2024, which L.G. signed, the previous weekly visitation schedule was maintained. At the time the instant appeal was filed, the case plan goal for E.J.W. was reunification with L.G.

We find no evidence in the record that L.G. was deprived of his due process right to family integrity. L.G. was afforded the opportunity to be present at every court hearing, he was allowed visitation with E.J.W., and the original goal of E.J.W.'s case plan was reunification with L.G. The eighth assignment of error is therefore without merit.

**DECREE**

The adjudication/disposition judgment of the Twenty-First Judicial District Court, adjudicating E.J.W. to be a child in need of care as to the appellant, L.G., ordering E.J.W. to remain in the custody of the State of Louisiana, Department of Children and Family Services, and approving the case plan of reunification

16

submitted by the Louisiana Department of Children and Family Services, is affirmed. Costs of this appeal are assessed to the appellant.

**AFFIRMED.**